**Suzan ZANER and Ray Owens, Petitioners,**

v.

**CITY OF BRIGHTON and United Power, Inc., Respondents.**

No. 95SC123.

Supreme Court of Colorado, En Banc.

May 28, 1996.

The Pratt Law Firm, Kevin B. Pratt, Castle Rock, for Petitioners.

Daniel, McCain, Brown, Wallace & Brubaker, P.C., Margaret R. Brubaker, Brighton, for Respondent City of Brighton.

Karowsky, Witwer, Miller & Oldenburg, Walker Miller, Greeley, for Respondent United Power, Inc.

Geoffrey T. Wilson, Denver, for Amicus Curiae Colorado Municipal League.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Zaner v. City of Brighton*, 899 P.2d 263 (Colo.App.1995), the court of appeals affirmed a judgment entered by the trial court in favor of defendant-respondent City of Brighton (the city) and intervenor-respondent United Power, Inc. (United Power) and against plaintiffs-petitioners Suzan Zaner and Ray Owens (plaintiffs) determining that a special election held by the city to obtain voter approval for the transfer of the city's utility franchise did not violate article X, section 20, of the Colorado Constitution entitled "The Taxpayer's Bill of Rights."[1] Having granted certiorari to review the propriety of the court of appeals' decision, we affirm.

## I

On May 4, 1993, the city council of Brighton (the council) adopted an ordinance conditionally approving the transfer of the city's electric utility franchise from the Public Service Company of Colorado to United Power. On June 3, 1993, registered electors opposed to the transfer filed a referendum petition with the city clerk and requested the council to suspend, reconsider, and repeal the ordinance. On June 15, 1993, the council reconsidered and unanimously affirmed its prior approval of the proposed transfer. The council also adopted a resolution to submit the measure to a vote of registered electors at a special election on August 3, 1993, pursuant to section 1–40–127(2), 1B C.R.S. (1994 Supp.).

On July 22, 1993, the plaintiffs initiated this action against the city in the District Court of Adams County challenging the city's authority to hold the special election. The plaintiffs alleged that the special election was prohibited by article X, section 20(3)(a), which requires, *inter alia*, that all "ballot

issues" shall be decided in a "state general election, biennial local district election, or on the first Tuesday in November of odd-numbered years." The special election was held on August 3, 1993, as scheduled, and the electorate approved the proposed transfer.

The plaintiffs and the city filed cross-motions for summary judgment and stipulated that no material issues of fact were in dispute.[2] The trial court ultimately granted the city's motion, concluding that in view of all relevant provisions of article X, section 20, as well as provisions of sections 1–41–101 to –103, 1B C.R.S. (1995 Supp.), the election date specifications of article X, section 20(3)(a), apply only to ballot issues relating to fiscal matters and that the transfer of the city's utility franchise did not constitute such a fiscal matter.

In affirming the trial court's judgment, the court of appeals initially determined that article X, section 20(3)(a), was ambiguous when considered together with other constitutional provisions relating to the processes of initiative and referendum. The court then concluded that the election date provisions of section 20(3)(a) apply only to fiscal ballot issues which are "local government matters arising under [section 20 of article X]" as set forth in section 1–41–103(4), 1B C.R.S. (1994 Supp.). *Zaner*, 899 P.2d at 267. Determining that the transfer of a utility franchise did not constitute such a local government matter, the court held that the special election held by the city did not violate article X, section 20(3)(a). *Id.* at 271.

## II

The plaintiffs argue that article X, section 20(3)(a), requires all elections to be held on the dates specified therein. They contend that the provisions of article X, section

---

**1.** Article X, section 20, of the Colorado Constitution was an initiated constitutional amendment approved by voters in the 1992 general election and appeared on the ballot as Amendment 1 and has generally been referred to as the "Tabor amendment."

**2.** United Power intervened in the matter as a defendant after the city had filed its motion for summary judgment. United Power filed an answer and together with the city and the plaintiffs,

executed a stipulation establishing an absence of any dispute over any material fact and requesting the trial court to enter judgment by way of ruling on the pending cross-motions of the city and of the plaintiffs. Although the trial court's order refers to a cross-motion filed by "Defendant and Intervenor Defendant," the record on appeal does not permit the conclusion that United Power in fact joined the city's motion.

20(3)(a), do not materially conflict with other constitutional provisions and represent an unambiguous determination by the people to limit the dates on which elections may be held. We reject these arguments.

## A

▮▮▮ When construing a constitutional amendment courts must ascertain and give effect to the intent of the electorate adopting the amendment. *Bolt v. Arapahoe County Sch. Dist. No. Six,* 898 P.2d 525, 532 (Colo. 1995); *Urbish v. Lamm,* 761 P.2d 756, 760 (Colo.1988). To determine intent, courts first examine the language of the amendment and give words their plain and commonly understood meaning. *Bolt,* 898 P.2d at 532; *City of Aurora v. Acosta,* 892 P.2d 264, 267 (Colo.1995); *Urbish,* 761 P.2d at 760. Courts should not engage in a narrow or technical reading of language contained in an initiated constitutional amendment if to do such would defeat the intent of the people. *People in the Interest of Y.D.M.,* 197 Colo. 403, 407, 593 P.2d 1356, 1359 (1979).

▮▮▮ Language contained in a constitutional amendment is ambiguous if reasonably susceptible to more than one interpretation. *See In re Interrogatories Relating to the Great Outdoors Colorado Trust Fund,* 913 P.2d 533, 538 (Colo.1996); *cf. Aspen Highlands Skiing Corp. v. Apostolou,* 866 P.2d 1384, 1389 (Colo.1994). If the intent of the electorate is not clear from the language of an amendment, courts should construe the amendment in light of the objective sought to be achieved and the mischief to be avoided by the amendment. *People in Interest of Y.D.M.,* 197 Colo. at 407, 593 P.2d at 1359; *see Acosta,* 892 P.2d at 267. Courts should consider the amendment as a whole and, when possible, adopt an interpretation of the language which harmonizes different constitutional provisions rather than an interpretation which would create a conflict between such provisions. *Bolt,* 898 P.2d at 532; *Bickel v. City of Boulder,* 885 P.2d 215, 229 (Colo.1994), *cert. denied sub nom. Wright v. Boulder Valley Sch. Dist. RE–2,* —— U.S.

——, 115 S.Ct. 1112, 130 L.Ed.2d 1076 (1995); *cf. Wilczynski v. People,* 891 P.2d 998, 1001 (Colo.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1274, 134 L.Ed.2d 220 (1996).

## B

Prior to the effective date of article X, section 20, all elections on statewide measures initiated by or referred to the people were required to be scheduled in even-numbered years at the state biennial regular general election. Colo. Const. art. V, § 1(4); § 1–1–104(12), 1B C.R.S. (1980). Elections on local measures could be scheduled at regular or special elections held not less than sixty days nor more than one hundred fifty days after the date the petition calling for such election was filed. Colo. Const. art. V, § 1(9); § 1–40–115(2), 1B C.R.S. (1991 Supp.).[3]

Article X, section 20, contains the following provisions with respect to the scheduling of elections:

(3) **Election provisions.** (a) Ballot issues shall be decided in a state general election, biennial local district election, or on the first Tuesday in November of odd-numbered years. Except for petitions, bonded debt, or charter or constitutional provisions, districts may consolidate ballot issues and voters may approve a delay of up to four years in voting on ballot issues....

(b) 15–25 days before a ballot issue election, districts shall mail at the least cost, and as a package where districts with ballot issues overlap, a titled notice or set of notices addressed to "All Registered Voters" at each address of one or more active registered electors. Titles shall have this order of preference: **"NOTICE OF ELECTION TO INCREASE TAXES/TO INCREASE DEBT/ON A CITIZEN PETITION/ON A REFERRED MEASURE."** ...

(c).... Ballot titles for tax or bonded debt increases shall begin, **"SHALL (DISTRICT) TAXES BE INCREASED (first,**

---

**3.** The provisions contained in § 1–40–115 were relocated to § 1–40–127 in 1993, and again relo-

cated to § 31–11–105 in 1995.

or if phased in, final, full fiscal year dollar increase) ANNUALLY ... ?" or "SHALL (DISTRICT) DEBT BE INCREASED (principal amount), WITH A REPAYMENT COST OF (maximum total district cost), ... ?"

Colo. Const. art. X, § 20(3)(a)–(c) (emphasis in original). These provisions indicate that in general voters may consider ballot issues only on one of three possible dates: when a state general election is held, when a biennial local district election is held, or on the first Tuesday in November of odd-numbered years. The term "ballot issue" is defined as "a non-recall petition or referred measure in an election." Colo. Const. art. X, § 20(2)(a).

■ The plaintiffs argue that because the term "ballot issue" as defined in article X, section 20(2)(a), is not limited in any manner, all initiated or referred measures, regardless of subject matter, may be decided only on one of the three dates specified by article X, section 20(3)(a). Such construction of article X, section 20(3)(a), would require the conclusion that while registered electors could vote on statewide measures every year rather than only every two years, registered electors of cities, towns, and municipalities could no longer hold special elections with respect to locally initiated or referred measures. Admittedly, article X, sections 20(2)(a) and (3)(a), can be so construed if read in isolation. However, courts must be careful not to determine intent by considering language in isolation when other relevant provisions cast doubt upon that interpretation. Cf. In re Estate of Kettering, 151 Colo. 202, 207, 376 P.2d 983, 986 (1962).

■ We have previously recognized that article X, section 20, constitutes an example of the people exercising their initiative power to enact laws in the specific context of state and local government finance, spending, and taxation. Bickel, 885 P.2d at 226. Article X, section 20, provides the people with greater direct control over government growth by, among other things, setting various spending and revenue limits and requiring voter ap-

proval of measures that would increase debt, spending, or taxes. Bolt, 898 P.2d at 535; Nicholl v. E–470 Pub. Highway Auth., 896 P.2d 859, 867 (Colo.1995); Acosta, 892 P.2d at 268; Submission of Interrogatories on Senate Bill 93–74, 852 P.2d 1, 4 (Colo.1993). Viewed from this perspective, article X, section 20(3)(a), may reasonably be construed to apply only to issues of government financing, spending and taxation governed by article X, section 20, and to have no bearing on the people's ability to schedule special elections on local measures not affected by article X, section 20.

This construction of the provisions of article X, section 20(3)(a), is supported by the fact that the provisions are located in article X of the Colorado Constitution, entitled "Revenue." In approving an initiated measure the people in effect determine where the amendment will be placed in the constitution.[4] The placement of article X, section 20, in an article of the constitution entitled "Revenue" supports the conclusion that the provisions of that section are intended to apply only to issues with revenue implications. Romer v. Board of County Comm'rs, 897 P.2d 779, 785 (Colo.1995) ("A title aids the construction of a constitutional or statutory section by providing its purpose and the controlling intent of those who enacted it."); cf. People v. Zapotocky, 869 P.2d 1234, 1239–40 (Colo.1994) (courts may consider the title of legislation in resolving uncertainties concerning legislative intent). Furthermore, the title of article X, section 20, itself, "The Taxpayer's Bill of Rights," strongly suggests that article X, section 20, emphasizes the ability of taxpayers to influence governing authorities only with respect to government financing, spending and taxation.

Other provisions of article X, section 20, indicate that the plaintiffs' broad interpretation is not warranted. Article X, section 20(1), of the Colorado Constitution contains the following pertinent language:

(1) **General Provisions.** This section takes effect December 31, 1992 or as stat-

---

4. We note that a proposed initiative includes the proposed text of the amendment and language concerning placement of the measure in the constitution. § 1–40–102(4), 1B C.R.S. (1995 Supp.)

(formerly § 1–40–100.3(2), 1B C.R.S. (1991 Supp.)). Therefore, at the time of voting the people are apprised of the proposed placement of an amendment.

ed. Its preferred interpretation shall reasonably restrain most the growth of government. All provisions are self-executing and severable and supersede conflicting state constitutional, state statutory, charter, or other state or local provisions. Other limits on district revenue, spending, and debt may be weakened only by future voter approval....

Colo. Const. art. X, § 20(1). The reference to "[o]ther limits on district revenue, spending and debt" suggests that article X, section 20, itself is concerned with such limitations and supports the view that it was intended to restrain government growth by permitting voter control over government revenue, spending and debt. To the extent article X, section 20(3)(a), is limited to ballot issues of government financing, spending and taxation governed by article X, section 20, it effectuates this intent. Finally, as the court of appeals observed, notice provisions of article X, sections 20(3)(b) and 20(3)(c), refer exclusively to fiscal matters. The language of these sections further supports the conclusion that article X, section 20, does not contemplate non-fiscal matters.

The plaintiffs' proposed construction of article X, section 20(3)(a), would restrict the ability of electors to hold special elections on local issues in cases where other constitutional provisions expressly authorize or require special elections. For instance, article XX, section 5, of the Colorado Constitution contains the following pertinent provisions:

Section 5. New charters, amendments or measures. The citizens of the city and county of Denver shall have the exclusive power to amend their charter or to adopt a new charter, or to adopt any measure as herein provided;

It shall be competent for qualified electors in number not less than five percent of the next preceding gubernatorial vote in said city and county to petition the council for any measure, or charter amendment, or for a charter convention. The council shall submit the same to a vote of the qualified electors at the next general election not held within thirty days after such petition is filed; whenever such petition is signed by qualified electors in number not less than ten percent of the next preceding gubernatorial vote in said city and county, with a request for a special election, *the council shall submit it at a special election to be held not less than thirty nor more than sixty days from the date of filing the petition* ....

Colo. Const. art. XX, § 5 (emphasis added). We have concluded that article XX, section 5, authorizes the City and County of Denver to schedule a vote of the electorate at a general election when five percent of voters demonstrate an interest in a charter proposal and to schedule a special election for the sole purpose of voting on a charter proposal when ten percent of voters have demonstrated an interest in the proposal. *Election Comm'n v. McNichols,* 193 Colo. 263, 266, 565 P.2d 937, 939 (1977). The plaintiffs' proposed construction of article X, section 20, would prevent the City and County of Denver from scheduling special elections, thus prohibiting what article XX, section 5, expressly authorizes.

Article V, section 1(9), of the Colorado Constitution contains the following pertinent language:

(9) The initiative and referendum powers reserved to the people by this section are hereby further reserved to the registered electors of every city, town, and municipality as to all local, special, and municipal legislation of every character in or for their respective municipalities. The manner of exercising said powers shall be prescribed by general laws; except that cities, towns, and municipalities may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation....

Colo. Const. art. V, § 1(9). Section 1(9) thus authorizes the General Assembly to promulgate laws respecting the manner of exercising initiative and referendum powers at the local level. Pursuant to this authority, the General Assembly enacted sections 31–11–101 to –117, 12B C.R.S. (1995 Supp.). Section 31–11–105 contains the following pertinent language:

(4) If, upon reconsideration, the ordinance or part thereof protested is not repealed, the legislative body shall submit

the measure to a vote of the registered electors at a regular or special election held not less than sixty days and not more than one hundred fifty days after the final determination of petition sufficiency, unless otherwise required by the state constitution....

§ 31–11–105(4), 12B C.R.S. (1995 Supp.). This statute authorizes special elections to be held not less than sixty days and not more than one hundred fifty days subsequent to a final determination that a local referendum petition is sufficient. It is substantially similar to section 1–40–127(2), 1B C.R.S. (1994 Supp.), which the city relied upon in scheduling its special election in this case. The plaintiffs' proposed construction of article X, section 20(3)(a), would render the legislation enacted to implement article V, section 1(9), of the Colorado Constitution meaningless, in effect prohibiting what article V, section 1(9), authorizes.

The plaintiffs argue that even if their suggested construction of article X, section 20(3)(a), creates a conflict with other constitutional provisions, such construction must be adopted because article X, section 20(1), establishes the principle that the provisions of article X, section 20, supersede any conflicting constitutional, statutory, or state and local provisions. We disagree with this argument.

■ The provision urging deference to the provisions of article X, section 20, in the event of a conflict with other constitutional or statutory provisions does not compel a court to construe the provisions of article X, section 20, in a manner that results in conflicts with other constitutional or statutory provisions. To the contrary, in construing article X, section 20, as in construing all constitutional provisions, a court should endeavor to adopt a construction that harmonizes those provisions with other constitutional provisions. *Bolt,* 898 P.2d at 532; *Bickel,* 885 P.2d at 229.

■ In our view, article X, section 20(3)(a), limits the scheduling of elections regarding issues of government financing, spending and taxation governed by article X, section 20, and the provisions of article X,

section 20, supersede the general provisions of article V, section 1, of the Colorado Constitution only with respect to such issues. When the provisions of article X, section 20, are not applicable, article V, section 1, and implementing legislation controls.

### III

■ The plaintiffs argue that sections 1–41–101 to –103, 1B C.R.S. (1995 Supp.), enacted by the General Assembly to resolve ambiguities existing in the provisions of article X, section 20, are unconstitutional because they conflict with those self-executing constitutional provisions. We reject this argument.

■ A statute is presumed to be constitutional, and a party asserting that a statute is unconstitutional has the burden of proving that assertion beyond a reasonable doubt. *People v. Janousek,* 871 P.2d 1189, 1195 (Colo.1994). Although constitutional provisions which are self-executing require no implementing legislation, *In re Interrogatories Propounded by the Senate Concerning House Bill 1078,* 189 Colo. 1, 9, 536 P.2d 308, 315 (1975); *People ex rel. Clay v. Bradley,* 66 Colo. 186, 188, 179 P. 871, 871 (1919), legislation that furthers the purpose of self-executing constitutional provisions or facilitates their enforcement is permissible. *Loonan v. Woodley,* 882 P.2d 1380, 1386 (Colo.1994). However, legislation which directly or indirectly impairs, limits or destroys rights granted by self-executing constitutional provisions is not permissible. *Id.*

### A

Section 1–41–101 contains the following pertinent language:

The general assembly hereby finds, determines, and declares that section 20 of article X of the state constitution requires that a ballot issue election be held on the first Tuesday in November of odd-numbered years; that the provisions of section 20(2) and 20(3) of said article X are unclear as to what issues can be submitted to a vote in the odd-year election; ... and that, in view of the issues set out in this section, the general assembly should exercise its

legislative power to resolve the ambiguities in section 20 of article X in a manner consistent with its terms.

§ 1–41–101, 1B C.R.S. (1995 Supp.). We have determined that the provisions of article X, section 20(3)(a), are ambiguous. The General Assembly did not exceed its authority by enacting legislation to resolve that ambiguity.

Section 1–41–103 contains the following pertinent language:

**Local ballot issue elections in odd-numbered years.** (1) At the local election to be held on the first Tuesday of November in 1993, and in each odd-numbered year thereafter, the following issues shall appear on the ballot if they concern local government matters arising under section 20 of article X of the state constitution and if they are submitted in accordance with applicable law:

(a) Amendments to the charter of any home rule city or home rule county initiated by the voters or submitted by the legislative body of the home rule city or county in accordance with said charter;

(b) Ordinances, resolutions, or franchises proposed in accordance with section 1 of article V of the state constitution and section 31–11–104, C.R.S.;

(c) Measures referred to the people pursuant to petitions filed against an ordinance, resolution, or franchise passed by the legislative body of any local government in accordance with section 1 of article V of the state constitution and section 31–11–105, C.R.S.;

(d) Questions which are referred to the people by the governing body of the local government in accordance with the law prescribing procedures therefor;

(e) Questions which are initiated by the people in accordance with the law prescribing procedures therefor.

§ 1–41–103(1)(a)–(e), 1B C.R.S. (1995 Supp.). The General Assembly has defined "local government matters arising under section 20 of article X" as follows:

(4) As used in this section, "local government matters arising under section 20 of article X of the state constitution" includes:

(a) Approval of a new tax, tax rate increase, mill levy above that for the prior year, or extension of an expiring tax, or tax policy change directly causing a net tax revenue gain pursuant to section 20(4)(a) of article X of the state constitution;

(b) Approval of the creation of any multiple-fiscal year direct or indirect debt or other financial obligation without adequate present cash reserves pledged irrevocably and held for payments in all future fiscal years pursuant to section 20(4)(b) of article X of the state constitution;

(c) Approval of emergency taxes pursuant to section 20(6) of article X of the state constitution;

(d) Approval of revenue changes pursuant to section 20(7) of article X of the state constitution;

(e) Approval of delay in voting on ballot issues pursuant to section 20(3)(a) of article X of the state constitution;

(f) Approval of the weakening of a local limit on revenue, spending, and debt pursuant to section 20(1) of article X of the state constitution.

§ 1–41–103(4)(a)–(f), 1B C.R.S. (1995 Supp.). Pursuant to section 1–41–103, proposed amendments to home-rule charters and local initiated or referred measures concerning issues arising under the provisions of article X, section 20, may be submitted to the people for a vote at a local election held on the first Tuesday of November in odd-numbered years. We have determined that the provisions of article X, section 20(3), apply only to issues of government financing, spending, and taxation governed by article X, section 20.[5] Contrary to the plaintiffs' argument, sections 1–41–103(4)(a)–(f) are consistent

---

**5.** We note that article X, section 20(3)(a), contains a provision permitting voters to delay a vote on a ballot issue up to four years. The General Assembly has defined this issue as a "local government matter[] arising under section 20 of article X" which may be submitted for a vote at a local election held on the first Tuesday of November in odd-numbered years. We do not address the question of whether this issue is a ballot issue subject to the election provisions of article X, section 20(3)(a).

with and serve to implement article X, section 20.

## B

The plaintiffs argue that even if article X, section 20(3)(a), applies only to ballot issues of a fiscal nature, the issues specified in sections 1–41–103(4)(a) through (f) do not include all of the fiscal issues governed by article X, section 20(3)(a), and that section 1–41–103(5) in effect unconstitutionally authorizes special elections on fiscal issues which may be governed by article X, section 20(3)(a). The plaintiffs contend that the transfer of a utility franchise constitutes a fiscal issue that is not specified in sections 1–41–103(4)(a) through (f) but is governed by article X, section 20(3)(a).

Section 1–41–103(5) contains the following pertinent language:

(5) The submission of issues at elections in November of odd-numbered years in accordance with this section, or at other elections as provided in section 20(3)(a) of article X of the state constitution shall not be deemed the exclusive method of submitting local issues to a vote of the people, and nothing in this section shall be construed to repeal, diminish, or otherwise affect in any way the authority of local governments to hold issue elections in accordance with other provisions of law.

§ 1–41–103(5), 1B C.R.S. (1995 Supp.). The General Assembly has not defined the term "local issues" for purposes of section 1–41–103(5). However, we need not address the precise meaning of that term. We have determined that article X, section 20(3)(a), applies only to issues of government financing, spending, and taxation governed by article X, section 20, and not to all issues regardless of subject matter nor even to all issues which can be characterized as fiscal. In our view, the transfer of a utility franchise from one utility company to another is not an issue of government financing, spending, or taxation governed by article X, section 20. In view of this conclusion, we need not address the question posed by the plaintiffs respecting the scope of section 1–41–103(5).

## IV

For the foregoing reasons, we affirm the judgment of the court of appeals.