**Douglas BRUCE, on behalf of himself and all other registered electors in Colorado Springs, Plaintiff–Appellant,**

v.

**CITY OF COLORADO SPRINGS, Does I–X, Defendants–Appellees.**

**No. 97CA1486.**

Colorado Court of Appeals,
Div. III.

Dec. 10, 1998.

Douglas Bruce, Pro Se.

Patricia K. Kelly, City Attorney, Steven K. Hook, Assistant City Attorney–Litigation, Colorado Springs, Colorado, for Defendants–Appellees.

Opinion by Judge DAVIDSON.

In this action contesting the constitutionality and validity of a mail ballot election, plaintiff, Douglas Bruce, appeals from the denial of his motion for preliminary injunction and the summary judgment entered in favor of defendants, the City of Colorado Springs and Does I–X. We affirm.

On February 25, 1997, the City approved an ordinance rezoning a part of the city. In response to this action, plaintiff circulated and submitted a petition to repeal the ordinance. The City, as required by Colorado Springs City Charter 12–60(a)(3), reconsidered the ordinance and declined to repeal it. It then submitted the ordinance to a special election. The City Council decided to conduct the election by mail ballot as provided for under the Mail Ballot Election Act, §1–7.5–101, et seq., C.R.S.1998.

Plaintiff filed a complaint against the City and included motions seeking a temporary restraining order, preliminary injunction, and permanent injunction, asserting claims that the City was in violation of or would violate its charter provisions, that the Mail Ballot Election Act was unconstitutional, and that the City, by its conduct of the election, would violate the Act.

Following a hearing on plaintiff's motion for preliminary injunction, the trial court denied the motion. The election was held on July 15, 1997, with the result being approval of the ordinance. The court, on August 19, granted the City's motion for summary judgment on plaintiff's remaining claims.

## I.

Plaintiff first contends that the trial court erred in denying his motion for preliminary injunction. We disagree.

The decision to grant or deny a preliminary injunction is within the sound discretion of the trial court. In exercising this discretion, the court must find that the party seeking the injunction has demonstrated: 1) a reasonable probability of success on the merits; 2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; 3) that no plain, speedy, and adequate remedy exists at law; 4) that granting the injunction will not disserve the public interest; 5) that the balance of equities favors injunction; and 6) that the injunction will preserve the status quo pending a trial on the merits. *Rathke v. MacFarlane,* 648 P.2d 648 (Colo.1982).

An action to enjoin the holding of a special election must be brought on the ground that required election procedures or the conduct of the election has been contaminated to the extent that the true will of the voting public may not be reflected or that a statutory requirement has not been substantially complied with by those responsible for the election. *Crowe v. Wheeler,* 165 Colo. 289, 439 P.2d 50 (1968).

Here, plaintiff sought a preliminary injunction to enjoin the City: 1) from holding an election by mail ballot; 2) from holding the election on a date other than those allowed under Colorado Springs City Charter 7–90; and 3) from ignoring the election notice provisions of Colorado Springs City Charter 7–90. In seeking to enjoin the special election, plaintiff argued that: 1) the Mail Ballot Election Act was unconstitutional; 2) the election would not be conducted in conformance with the Act; and 3) the election violated the provisions of Colorado Springs City Charter 7–90. In support of this argument, he presented the testimony of the city clerk that certain fraudulent actions could occur in a mail ballot election and that she had not followed exactly every procedure outlined in the Act.

In denying plaintiff's motion for preliminary injunction, the trial court determined that he had not demonstrated a reasonable probability of success on the merits. In making this decision, the court noted that, in *Zaner v. City of Brighton,* 917 P.2d 280 (Colo.1996), the supreme court had determined that the special election provisions under Colo. Const. art. X, §20, applied only to elections on government fiscal issues that were controlled by such section. Because the Colorado Springs City Charter contains similar language, the court determined that, likewise, the setting of a date for a special election was not controlled by Colorado Springs City Charter 7–90. Rather, the date for a special election on this initiative issue was governed by Colorado Springs City Charter 12–60.

The court also determined that mail ballot elections are constitutional because a compelling state interest exists in increasing voter participation and that interest outweighs any risk of fraud in such elections.

Finally, the court determined that the city clerk had designed a system for conducting the election that minimized the risk of fraud and accommodated the privacy interests of the voters and, therefore, was in compliance with the City Charter and the Mail Ballot Election Act. The court specifically found that the possibility that fraud could occur existed but that such possibility was "extreme and unlikely" in light of the security measures that had been implemented for the election.

Plaintiff argues, however, that the trial court erred in its determination and that he did demonstrate a reasonable probability of success on the merits of his claims. We conclude that the trial court properly denied plaintiff's motion seeking to enjoin the election.

## A.

Initially, we note that plaintiff's challenge to the required procedures, particularly his challenge based on an alleged failure to mail election notices containing information concerning the issue before the voters, is rendered moot by the fact that the election has been held.

A case is moot when a judgment, if rendered, will have no practical legal effect upon an existing controversy. *Crowe v. Wheeler, supra* (issues specific to an election are rendered moot once the election has been held). If the conduct sought to be redressed is peculiar to a particular election, the occurrence of the election itself will moot the controversy. *W–470 Concerned Citizens v. W–470 Highway Authority*, 809 P.2d 1041 (Colo.App.1990) (holding of referendum election rendered moot declaratory judgment action based on allegations concerning distribution of brochures about the election issue).

Here, the City did not send election notices containing pro and con statements concerning the zoning ordinance because it determined that, under Colorado Springs City Charter 7–90, such notice was required only for fiscal issues governed by that charter provision. Because these notices would have contained information specific to the July 15 election, a ruling concerning such notices would have no practical legal effect on this or future controversies. *See W–470 Concerned Citizens v. W–470 Highway Authority, supra* (information in brochures specifically geared toward the circumstances surrounding the election).

Further, the City did not indicate that it would refuse to send election notices when such were required by the City Charter. Plaintiff has not demonstrated that if, in future elections, election notices are required to be sent, the City will not comply with such requirement. Nor has he shown that, if such omission should occur, he would be unable to obtain review of a claim based on the City's failure to send election notices. Thus, we do not find that this dispute is capable of repetition, yet evading review so as to warrant applying that exception to the mootness doctrine. *See Campbell v. Meyer*, 883 P.2d 617 (Colo.App.1994) (issue is not capable of repetition yet evading review if, in similar situations in future, voters may obtain preelection review of claims or pursue claims on appeal if measure passed).

## B.

Nevertheless, although they are technically moot, we address plaintiff's contentions concerning the constitutionality of the Mail Ballot Election Act and its application as issues of continuing public importance. *See State Board of Chiropractic Examiners v. Stjernholm*, 935 P.2d 959 (Colo.1997) (court may review moot case if issue is one that is capable of repetition yet evading review or if it involves issues of great public importance).

## 1.

Plaintiff contends that, because §1–7.5–101, which allows for mail ballot elections, is unconstitutional on its face and as applied in this election, the trial court erred in not enjoining the election. We reject this contention.

The presumption of constitutionality afforded statutes includes the presumption that the legislative body intends the statute it enacts to be compatible with constitutional standards. *Meyer v. Lamm*, 846 P.2d 862 (Colo.1993).

## a.

Plaintiff argues first that §1–7.5–101 is unconstitutional on its face. He argues that, in light of the possibility that fraud may occur, no compelling government interest exists to justify conducting an election by mail ballot. He further argues that requiring voters to affix a postage stamp in order to return a ballot is an unconstitutional poll tax and, therefore, a denial of voter's right to a free election.

In considering a challenge to a state election law, a court must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that a plaintiff seeks to vindicate against the interests put forward by the state as justification for the burden imposed by its rule. The court must also consider the extent to which those interests make it necessary to burden the plaintiff's rights.

If the regulation actually limits or hinders the ability of a person to exercise a fundamental right, then such provision will be strictly scrutinized. However, if a state

election law imposes reasonable, nondiscriminatory restrictions upon the rights of voters, the state's important regulatory interests generally are sufficient to justify the restrictions. *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (as a practical matter, and if elections are to be fair and honest, there must be regulation to bring order to the democratic process); *Loonan v. Woodley*, 882 P.2d 1380 (Colo.1994).

The right to vote is the essence of a democratic society. This right is fundamental because its exercise preserves all other rights. *Harman v. Forssenius*, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). Therefore, a compelling state interest exists in having voters fully participate in the election process. Thus, legislative efforts to achieve this goal of increased voter participation should be encouraged. *See Peterson v. City of San Diego*, 34 Cal.3d 225, 193 Cal.Rptr. 533, 666 P.2d 975 (1983) (reducing burdens of voting to increase participation is fundamental to maintenance of a representative government).

In providing for mail ballot elections as a means of achieving this compelling state interest, the General Assembly determined that "self-government by election is more legitimate and better accepted as voter participation increases." It also determined that such elections are cost efficient and have not resulted in increased fraud. Section 1–7.5–102, C.R.S.1998.

Mail ballot elections serve two purposes in encouraging participation in the election process. First, the convenience of voting by mail may increase voter participation. Second, the administration of mail ballot elections may provide economic savings and permit governmental entities to call special elections at relatively little cost. *See* §1–7.5–102; *Peterson v. City of San Diego, supra* (discussing advantages to holding mail ballot elections).

Hence, because a compelling state interest exists in encouraging increased voter participation and mail ballot elections serve to meet this interest, such elections, under §1–7.5–101, are not unconstitutional. *See Peterson v. City of San Diego, supra* (compelling state interest in securing citizen participation in maintaining representative government justifies mail ballot election); *Sawyer v. Chapman*, 240 Kan. 409, 729 P.2d 1220 (1986) (compelling state interest in increased voter participation outweighs risk of fraud and loss of secrecy in mail ballot election).

b.

Plaintiff also argues that requiring voters to affix a postage stamp to their ballots is an unconstitutional poll tax and a denial of a free election. We disagree.

Requiring a voter to pay a poll tax in order to exercise the right to vote is a denial of equal protection because it directly bars certain classes of voters. Accordingly, the payment of a state tax as a prerequisite to voting is unconstitutional. *See Harper v. Virginia State Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (poll tax generally viewed as a method of disenfranchising black voters); *United States v. Alabama*, 252 F.Supp. 95 (M.D.Ala.1966) (poll tax as precondition to vote is unjustified restriction on rights guaranteed by Due Process Clause); *United States v. Texas*, 252 F.Supp. 234 (W.D.Tex.1966) (state may not impose a penalty upon those who exercise a right guaranteed by the Constitution); *Evans v. Romer*, 854 P.2d 1270 (Colo.1993).

Even if we assume that, because the statute imposes a cost by requiring voters to use a postage stamp in order to return their ballots, the state has imposed a tax, we conclude that such cost is not unconstitutional.

If a reasonable restraint on the right to vote is necessary to accomplish a permissible state policy, it will be upheld. *United States v. Texas, supra.* And, even if a qualified voter is prevented from voting through the actions of another, there is no unconstitutional deprivation of the right to vote in the absence of a willful intent to impose a requirement for such purpose. *Morris v. Colorado Midland Ry. Co.*, 48 Colo. 147, 149, 109 P. 430, 430 (1910) (cause of action arises only if right to vote is denied because of "sinister" purpose).

Here, plaintiff has not asserted that the use of a stamp is a requirement imposed in

order to prevent people from voting. Rather, requiring voters to affix a stamp to their ballots is a reasonable requirement imposed for the purpose of efficiently conducting a mail ballot election.

Therefore, even if a voter was prevented from exercising his or her right to vote because of the lack of a stamp, such action does not constitute an unconstitutional poll tax in the absence of a willful intent to deprive the voter of the right by imposing such requirement. Thus, the requirement that the voter affix a stamp to return his or her ballot and thereby cast a vote is not an unconstitutional poll tax.

### 2.

Plaintiff contends that, even if §1–7.5–101 is constitutional, nevertheless, because the statutory requirements for a mail ballot election were not followed, voters in this election were denied their right to a secret ballot and, therefore, the election is void. We do not agree.

█ Substantial compliance provides the appropriate level of compliance to facilitate and secure the right to vote. *Meyer v. Lamm, supra.*

█ In determining whether a district has substantially complied with election law provisions, a court should consider: 1) the extent of the district's non-compliance; 2) the purpose of the provision violated; and 3) whether the district made a good faith effort to comply. *See Loonan v. Woodley, supra.*

### a.

█ Plaintiff first argues that the use of a single, tri-fold envelope in the mail ballot election failed to comply with the statutory requirement that the ballot packet contain a secrecy envelope. We disagree.

Section 1–7.5–106(1)(a), C.R.S.1998, requires that all mail ballots include, *inter alia,* a secrecy envelope.

Section 1–7.5–106, C.R.S.1998, authorizes the secretary of state to promulgate rules necessary to implement a mail ballot election, including the authority to prescribe the form of materials to be used. Here, the secretary

of state promulgated a rule allowing the use of a single, tri-fold envelope in mail ballot elections. Department of State Rule 10.7.3.1, 8 Code Colo. Reg. 31.

The purpose for requiring a secrecy envelope is to protect a voter's right to a secret ballot. The City, in compliance with the rules promulgated by the Secretary of State, used a single, tri-fold envelope that covered the voter's mark when it was folded in a certain way. Although it was not a separate envelope, the tri-fold envelope, because it concealed the voter's mark and protected the secrecy of the vote that was cast, fulfilled the purpose of §1–7.5–106(1)(a) and substantially complied with the requirements of the statute.

### b.

█ Section 1–7.5–107(3)(a), C.R.S.1998, requires that:

> [T]he designated election official shall mail to each active registered elector, at the last mailing address appearing in the registration records and in accordance with United States postal service regulations, a mail ballot packet, which shall be marked 'DO NOT FORWARD. ADDRESS CORRECTION REQUESTED', or any other similar statement that is in accordance with United States postal service regulations.

Plaintiff argues that the city clerk's failure to have "address correction requested" printed on each ballot in accordance with §1–7.5–107(3)(a) voids the election. We disagree.

Here, the city clerk testified that "Do not forward" was printed on the ballot envelopes in accordance with United States postal regulations. She further testified that the envelopes did not contain a request for address correction because nothing would have been done with that information.

Although the ballot envelopes did not contain the exact language set forth under §1–7.5–107(3)(a), they did contain similar language. Further, the printed request that the ballots not be forwarded served to prevent a person who had moved out of the voting district from casting a ballot.

Additionally, the city clerk's proposed election plan and the statutes provided a method

for any voter who had not received a ballot to obtain one. *See* §1–7.5–107(3)(d)(I), C.R.S. 1998. Under these circumstances, we conclude that the language printed on the ballot envelopes was in substantial compliance with the statutory requirements.

### 3.

We also disagree with plaintiff's contention that the election held on July 15, 1997, should have been enjoined because it was scheduled to be held on a date other than those specifically allowed under Colorado Springs City Charter 7–90 (city taxpayer's bill of rights).

We note that the city charter provisions governing special elections and the taxpayer's bill of rights are nearly identical to those in the state constitution. Thus, we find *Zaner v. City of Brighton, supra,* persuasive on this issue.

In *Zaner,* the supreme court determined that Colo. Const. art. X, §20, limits the scheduling of elections regarding issues of government financing, spending, and taxation, but that such provision does not control the setting of a special election for issues that are not governed by that provision. Similarly, Colorado Springs City Charter 7–90 limits the scheduling of elections regarding fiscal issues. Thus, if the issue here does not constitute a fiscal matter under Colorado Springs City Charter 7–90, then the election provisions therein do not apply.

Here, the issue on the special election ballot dealt with the approval or disapproval of a change in a zoning ordinance. This issue had nothing to do with government taxing, spending, or revenue, and therefore, a special election on this issue is not subject to the election requirements of Colorado Springs City Charter 7–90, but, instead, is controlled by Colorado Springs City Charter 12–60(a).

Under Colorado Springs City Charter 12–60(a)(2), the City, upon submission of a petition requesting that a proposed ordinance be put to a vote of the electorate, is required to, within 20 days, pass the proposed ordinance or call a special election to be held within 90 days at which the ordinance is to be submitted to the voters. This the City did.

Further, to accept plaintiff's interpretation would create a conflict between Colorado Springs City Charter 7–90 and 12–60 and preclude application of the latter provision to initiative or referendum issues. *See Zaner v. City of Brighton, supra* (if ballot measure under Colo. Const. art X, §20, were defined so as to include all initiated or referred measures, regardless of their subject matter, cities, towns, and municipalities would be barred from holding special elections with respect to locally initiated or referred measures); *Bickel v. City of Boulder,* 885 P.2d 215 (Colo.1994) (interpretation which harmonizes different constitutional provisions is favored over one that would create conflict).

### II.

Lastly, we disagree with plaintiff's contention that the trial court erred in dismissing his claim seeking a declaration that the City, in future elections, be required to use the same language on a petition as will appear on the ballot.

A claim seeking a declaratory judgment must involve an existing justiciable controversy, not one that might arise in the future. *Farmers Insurance Exchange v. District Court,* 862 P.2d 944 (Colo.1993).

Here, the trial court determined that plaintiff's request to prohibit the City from violating certain requirements on future initiatives that he might bring constituted a potential dispute that would not arise until he had filed a petition to which the City had given language different from that appearing on the ballot. Because plaintiff asserted a claim that rested on events that might occur in the future, the trial court properly dismissed this claim.

The judgment is affirmed.

JONES and RULAND, JJ., concur.