The Conservation Trust Fund is established by §29-21-101(2)(a)(I), C.R.S. in order to use Colorado lottery funds to support parks, open space, and recreation. Legislation has been introduced in the Colorado General Assembly to allow monies in the Conservation Trust Fund to be allocated for a specific administrative purpose: to permit state personnel to monitor proper use of Trust Fund dollars. The State Auditor and the Department of Local Affairs ask whether this use of Trust Fund assets is permissible under the Colorado Constitution.
QUESTION PRESENTED AND CONCLUSION
Question: Is it constitutional to appropriate monies in the Conservation Trust Fund, established by § 29-21-101(2)(a)(I), C.R.S., to a state agency to pay for audits and reviews of the use of Conservation Trust Fund dollars by local governments, given restrictions on the use of lottery revenues in Article XXVII
of the Colorado Constitution?
Answer: Yes. The voters who approved Article XXVII of the Colorado Constitution intended to ensure that lottery revenues are actually spent by eligible entities on parks, recreation, and open space. Appropriating part of the Colorado Trust Fund for the administration of auditing specifically tailored to guarantee the proper use of Colorado Trust Fund monies satisfies the Colorado Constitution.
BACKGROUND
Colorado's voters amended the Colorado Constitution in 1980 to authorize the General Assembly to establish a state-supervised lottery. Legislative Council of the General Assembly, Analysis of 1992 Ballot Proposals 39-43 (1992) (Research Publication No. 369); see Colo. Const., Art. XVII, § 2. A part of the net proceeds from the lottery are to be placed in a fund called the Conservation Trust Fund. The Conservation Trust Fund is to be distributed to municipalities and counties for parks, recreation, and open space purposes unless otherwise provided by statute. Analysis of 1992 Ballot Proposals, supra, at 40.
The General Assembly enacted legislation in 1982 to implement a Colorado lottery. The General Assembly allocated net revenues to be distributed ten percent to the Division of Parks and Outdoor Recreation, forty percent to the Conservation Trust Fund for distribution to local governments, and fifty percent to the Capital Construction Fund. In 1988, the General Assembly expanded the lottery system with electronic gaming. At the same time, the lottery funding formula was changed to pay for expansion of Colorado's prison capacity. Id.
In 1989, the percentage of lottery revenue allocated to parks, open space and recreation began to decline. By fiscal year 1992, approximately 62 percent of lottery revenue were allocated to capital construction, 8 percent went to the Division of Parks and Outdoor Recreation, and 30 percent was allocated to the Conservation Trust Fund. Id.
In response to these decreasing percentages, voters fixed lottery revenue allocation percentages in the Constitution and specified the uses for those funds. This was accomplished through the approval of Article XXVII of the Constitution in 1992. Id. at 41. Under Article XXVII, the Conservation Trust Fund is allocated 40 percent of net revenues and those funds are to be used for open space, recreation and parks.
The State Auditor completed a performance audit of the Conservation Trust Fund in January, 2004. The audit concluded that more than $1.2 million had been spent for purposes not allowed by statute, including expenditures for athletic teams, fireworks, public associations, clubs and recreation programs. The expenditure of another one-half million dollars was questioned. Report of the State Auditor, Conservation Trust Fund, Department of Local Affairs 2 (January 2004).
The General Assembly now wishes to appropriate a portion of the monies earmarked for the Conservation Trust Fund in order to pay for audits and reviews to assure the proper use of Colorado Trust Fund dollars by local entities. The Colorado Legislative Audit Committee and the Department of Local Affairs have asked me whether it is constitutional for lottery revenue to be used for those purposes. I conclude that it is.
LEGAL ANALYSIS
The Conservation Trust Fund is created by § 29-21-101(2)(a)(I), C.R.S. Under this provision and associated statutes, the Division of Local Government in the Department of Local Affairs annually determines the entities eligible to receive lottery revenues. It distributes eligible entity shares as soon as possible after receiving distributions from lottery revenues.
Colorado's Constitution provides for the distribution of the net proceeds of lottery games in part as follows:
 Forty percent to the Conservation Trust Fund for distribution to municipalities and counties and other eligible entities for parks, recreation and open space purposes.
Colo. Const. Art. XXVII, § 3(b)(I). The Constitution does not directly address whether monies can be appropriated from the Conservation Trust Fund for the administrative purpose of auditing the use of Conservation Trust Fund distributions.
The Constitution is ambiguous concerning whether this administrative use of Conservation Trust Fund dollars is proper. "Language contained in a constitutional amendment is ambiguous if reasonably susceptible to more than one interpretation." Zaner v. City of Brighton,917 P.2d 280, 283 (Colo. 1996). The constitution contains specific language indicating that the monies must actually be used for stated purposes by eligible entities, but the constitution contains no language expressing whether funds may or may not be used to audit local government use of Conservation Trust Funds. In this regard, the phrase "for parks, recreation and open space purposes" is reasonably open to interpretation.
From a practical perspective, there is no way to ensure that Colorado Trust Fund distributions are used as prescribed in the Constitution without auditing how they are used.
Ambiguous terms in the constitution should be construed in light of, and give effect to, the purposes of the provision involved. Zaner, supra, at 283. Moreover, any constitutional interpretation leading to an absurd result should be avoided. Bickel v. City of Boulder,885 P.2d 215, 229 (Colo. 1994), cert. denied, 513 U.S. 1155 (1995). I conclude that it is implicit in the language of the Constitution that the General Assembly is empowered to appropriate from the Conservation Trust Fund specifically to ensure that Conservation Trust Fund distributions are used constitutionally by recipients.
Moreover, a constitutional amendment must be interpreted to give effect to the will of the people adopting the amendment. Urbish v. Lamm,761 P.2d 756, 760 (Colo. 1988); In re Interrogatories Propounded by Senate Concerning House Bill, 1078, 189 Colo. 1,7, 536 P.2d 308,313 (1975). The intent of Colorado's voters in 1980 and in 1992 was to ensure that Conservation Trust Fund distributions are indeed spent by eligible entities on parks, recreation, and open space purposes. This intent is evident from Art. XXVII. Section 1(1) provides:
 The people of the State of Colorado intend that the net proceeds of every state-supervised lottery game operated under the authority of Article XVIII, Section 2 shall be guaranteed and permanently dedicated to the preservation, protection, enhancement and management of the state's wildlife, park, river, trail and open space heritage, except as specifically provided in this article. Accordingly, there shall be established the Great Outdoors Colorado Program to preserve, protect, enhance and manage the state's wildlife, park, river, trail and open space heritage. (emphasis added)
The Legislative Council of the General Assembly has noted that "[t]he original intent of the proponents of the lottery in 1980 was to dedicate all lottery proceeds to parks, outdoor recreation, and open space." Legislative Council of the General Assembly, Analysis of 1992 Ballot Proposals 41 (1992) (Research Publication No. 369). By 1992, 62 percent of the proceeds were allocated to capital construction, "a purpose for which lottery proceeds were not originally contemplated. Establishing the lottery distribution in the state constitution will ensure that these funds will be returned to parks and outdoor recreation as the proponents originally intended." Id.
Colorado's citizens are constitutionally entitled to be sure that lottery funds actually are used for their intended purposes by those who receive them. Using Conservation Trust Fund monies specifically to ensure that these funds are not spent on improper purposes by recipients satisfies this entitlement. I therefore conclude that the General Assembly is empowered to appropriate funds from the Colorado Trust Fund for this specific purpose.
CONCLUSION
The General Assembly constitutionally may enact legislation allowing lottery revenues deposited in the Conservation Trust Fund to be used to ensure administratively that Fund distributions are spent as constitutionally intended.
Issued this 2nd day of March, 2004.
KEN SALAZAR Colorado Attorney General
ALAN J. GILBERT Solicitor General
MAURICE KNAIZER Deputy Attorney General
MARK VALENTINE Assistant Attorney General
State Services Section