**Donetta DAVIDSON, in her official capacity as the Colorado Secretary of State, Petitioner,**

v.

**G.F. SANDSTROM, individually; Matt J. Puelen, Loretta Kennedy, and John L. Klomp, in their official capacities as the Board of County Commissioners for Pueblo County; Chris C. Munoz, in her official capacity as the County Clerk and Recorder for Pueblo County; Anthony Nunez and Raymond Koester, as individual electors, Respondents.**

No. 03SC287.

Supreme Court of Colorado, En Banc.

Jan. 26, 2004.

---

Ken Salazar, Attorney General, Maurice Knaizer, Deputy Attorney General, State Services Section, Denver, Colorado, Attorney for Petitioner.

Daniel Kogovesk, Pueblo County Attorney, Patricia J. Rosales–Chavez, Assistant County Attorney, Pueblo, Colorado, Attorneys for Respondents.

Justice RICE delivered the Opinion of the Court.

## I. Introduction

In 1994, the voters of Colorado enacted a constitutional amendment which imposed a two-term limit[1] on any "nonjudicial elected official of any county, city and county, city, town, school district, service authority, or any other political subdivision of the State of Colorado." Colo. Const. art. XVIII, § 11(1) ("section 11"). However, the amendment permitted voters of the enumerated entities to "lengthen, shorten or eliminate" term limits for any particular office. *Id.* at § 11(2).

In 2001, the Board of County Commissioners of Pueblo County ("the Board") referred a measure to the voters of the Tenth Judicial District which sought to exempt the district attorney for that district from term limits. The Tenth Judicial District has the same boundaries as Pueblo County and has no voters other than those registered to vote in Pueblo County. Donetta Davidson, the Colorado Secretary of State ("the Secretary"), instructed Chris Munoz, the Clerk and Recorder for Pueblo County, to remove the term limit question from the ballot, based on the Secretary's belief that the Board did not possess the authority to refer the measure to the voters of the district. Munoz did not follow the Secretary's instructions, and the question was submitted to the voters, who chose to eliminate term limits for the District Attorney for the Tenth Judicial District.

G.F. Sandstrom is the duly elected District Attorney for the Tenth Judicial District, and has served in that capacity for over twenty years. The Secretary has informed Sandstrom, Munoz, and the Board that she will not certify Sandstrom's name to the ballot in 2004 if he is nominated to run for another term as district attorney. The Secretary contends that the Board lacked authority to refer a measure to the voters of the Tenth Judicial District. Hence, the Secretary asserts that the referred measure is void and the results of the vote on the measure may not be recognized by the Secretary. Thus, in the Secretary's view, Sandstrom is not eligible to run for reelection.

Sandstrom, Munoz, the Board, and two Pueblo County voters filed a complaint against the Secretary in Pueblo District Court. They sought a declaratory judgment that district attorneys are not subject to the limits of section 11. In the alternative, they sought a judgment that the Board had legal authority to refer the measure to the voters of the Tenth Judicial District and the Secretary must therefore recognize the results of the vote on the measure.

The district court ruled that district attorneys are subject to term limits under section 11. However, the court found that in enacting section 11, voters of the state intended to create a means for political subdivisions to change the terms of office imposed by section 11. Because the voters of the Tenth Judicial District are the same as the voters of Pueblo County, the court held that the Board possessed the legal authority to refer the mea-

---

**1.** With respect to terms of office which are two years or shorter, the amendment imposes a three-term limit. Colo. Const. art. XVIII, § 11(1).

sure to the voters of the Tenth Judicial District.

Both parties appealed, and filed a joint petition for writ of certiorari to this court pursuant to C.A.R. 50. Because of the importance of the issues raised, we exercised our discretion to hear this case. We now affirm the ruling of the district court.

We find that district attorneys are "nonjudicial elected officials" within the meaning of section 11, and are therefore subject to the term limits of section 11. We further hold that the provision of section 11 which allows the voters to modify or eliminate term limits for a particular office is self-executing, requiring no further action by the legislature for implementation. Thus, because the boundaries of the Tenth Judicial District and Pueblo County are coextensive, with identical electors, we find that the Board validly referred the measure to the voters of the Tenth Judicial District regarding the elimination of term limits for their district attorney. Although the legislature may replace the procedure that we sanction today with one of its own choosing,[2] section 11 remains self-executing without any further legislative action.

## II. Background

### A. Recent History of Term Limits in Colorado

In 1990, Colorado voters passed an amendment to the Colorado Constitution which imposed term limits on the governor, lieutenant governor, secretary of state, attorney general, and state treasurer, Colo. Const. art. IV, § 1(2), and all state representatives and state senators. Colo. Const. art. V, § 3(2). In 1994, voters of Colorado passed Amendment 17, the provision under consideration today, which extended term limits to many other officials:

[N]o nonjudicial elected official of any county, city and county, city, town, school district, service authority, or any other political subdivision of the State of Colorado, no member of the state board of ed-

ucation, and no elected member of the governing board of a state institution of higher education shall serve more than two consecutive terms in office.

Colo. Const. art. XVIII, § 11(1). The voters also attempted to impose term limits on Colorado's congressional delegation, see Colo. Const. art. XVIII, § 9a(1), but this provision proved unconstitutional. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 783, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) (overturning a similar Arkansas provision). Nevertheless, the voters explicitly declared their support for nationwide term limits. Colo. Const. art. XVIII, § 9a(2) ("The people of Colorado hereby state their support for a nationwide limit. . . .").

In 1996, the voters of Colorado again returned to the term limits issue, passing Amendment 12 which instructed Colorado's state legislators to apply for a constitutional convention in order to propose a term-limits amendment to the United States Constitution. Amendment 12 further instructed Colorado's congressional delegation to vote to approve the proposed amendment. Amendment 12 also contained provisions for displaying on the ballot a particular candidate's stand on term limits. Amendment 12, however, was declared unconstitutional in *Morrissey v. State*, 951 P.2d 911, 917 (Colo.1998).

Undeterred, the voters of Colorado approved another term limits amendment in 1998. This amendment permitted, but did not require, candidates for the United States Congress to file a "Term Limits Declaration" with the Secretary indicating their intent to voluntarily limit their term in office if elected. Colo. Const. art. XVIII, § 12a(1). Such a declaration would then appear on the ballot as well as voter education materials, thereby informing voters of the candidate's position on term limits. *Id.* at § 12a(5).

More recently, the General Assembly referred an amendment to the voters of Colorado for the November 2002 ballot which would have exempted all district attorneys from term limits. Voter education materials ("the

---

**2.** The legislature may install a different procedure so long as it further facilitates, rather than hinders or limits, the people's exercising of their rights under section 11(2). *See Yenter v. Baker*, 126 Colo. 232, 237, 248 P.2d 311, 314 (1952); *Colorado Project–Common Cause v. Anderson*, 178 Colo. 1, 5, 495 P.2d 220, 222 (1972).

Bluebook") published by the Legislative Council of the Colorado General Assembly and distributed to the electorate noted that the Colorado Attorney General, in response to a request from the Secretary, had issued a formal opinion indicating his belief that district attorneys were subject to term limits under section 11.[3] Legislative Council of the Colorado General Assembly, *2002 Ballot Information Booklet, An Analysis of Statewide Ballot Issues and Recommendations on Retention of Judges,* Research Publication No. 502–10 at 22; Op. Att'y Gen. No. 2000–2 (Feb. 9, 2000). Thus, the Bluebook explained that the proposed amendment was necessary if the voters wished to exempt all district attorneys from term limits. In 2002, the voters rejected this measure by a wide margin.

## B. Facts and Procedural History

Section 11 applies to "terms of office beginning on or after January 1, 1995." Colo. Const. art. XVIII, § 11(1). Respondent G.F. Sandstrom has been the District Attorney for the Tenth Judicial District for over twenty years and thus has served two consecutive terms since January 1, 1995. Consequently, if section 11 covers the terms of office of district attorneys, Sandstrom would be ineligible to run for reelection in 2004.

In September 2001, the Secretary received information that the Board intended to refer a measure to the voters of the Tenth Judicial District for the November 2001 ballot, seeking to exempt the district attorney from term limits. Thereafter, the Secretary notified Munoz that only the General Assembly possessed the authority to refer a measure to the voters regarding term limits of district attorneys. The Secretary then sent a memorandum to all Colorado County Clerks and Recorders informing them that term limits of district attorneys was a state question, not a local one, and required certification to the

ballot by the Secretary. She therefore instructed them to neither count nor certify any votes cast on such a measure.

On November 5, 2001, the day before the election, the Secretary reiterated to Munoz that the Secretary would not certify any votes counted, and further stated that she would not recognize the results if a district attorney who would otherwise be term-limited sought to run for reelection. On October 31, 2001, however, Munoz had been advised by Daniel Kogovsek, Pueblo County Attorney, that it was the opinion of his office that Munoz's duty required her to count and certify the results of the election. On November 6, 2001, the election was held. Munoz did not follow the Secretary's instructions, and instead counted the votes that were cast. The voters of the Tenth Judicial District approved the measure to exempt their district attorney from term limits, and Munoz certified these results.

On August 16, 2002, Sandstrom,[4] Munoz, Matt Puelen, Loretta Kennedy, John Klomp, Anthony Nunez, and Ray Koester filed a complaint against the Secretary, seeking a declaratory judgment that district attorneys are not subject to the term limits contained in section 11, or in the alternative, that the Board validly referred the term limits measure to the voters of the Tenth Judicial District. Puelen, Kennedy, and Klomp are members of the Board and sued in their official capacity. Munoz also sued in her official capacity as County Clerk and Recorder for Pueblo County, while Nunez and Koester sued in their capacity as individual electors. Nunez is the chair of the Democratic Party of Pueblo County and Koester is the chair of the Republican Party of Pueblo County. Both Nunez and Koester voted to eliminate term limits for the District Attorney of the Tenth Judicial District, and both wish to vote to reelect Sandstrom for district attorney at

---

3. The Bluebook also indicated that the Secretary had determined that only the legislature was empowered to place a term limits measure before the voters of a particular judicial district, but term limits could also be altered through a statewide constitutional amendment. Legislative Council of the Colorado General Assembly, *2002 Ballot Information Booklet, An Analysis of Statewide Ballot Issues and Recommendations on Re-*

*tention of Judges,* Research Publication No. 502–10 at 22.

4. Sandstrom initially brought suit in both his official and individual capacity. He subsequently stipulated to the dismissal of the suit in his official capacity.

the next general election scheduled for November 2, 2004.

Both parties filed motions for summary judgment. On February 18, 2003, the district court ruled that district attorneys are subject to term limits under section 11. The court observed that the office of district attorney is created in the judicial section of the Colorado Constitution. Colo. Const. art. VI, § 13. However, the district court noted that this court has consistently held that district attorneys are executive officers, and that the term "judicial officer" refers exclusively to judges. The court therefore agreed with the Secretary and determined that district attorneys are a "nonjudicial elected official" within the meaning of section 11.

However, the court rejected the Secretary's arguments that section 11 was not self-executing and that the Board did not have authority to refer the measure to the voters of the Tenth Judicial District. The court noted that the voters of the state could not have intended such an anomalous result in approving section 11 and its provisions regarding the ability of voters of political subdivisions to modify the limits imposed under section 11. It therefore held that section 11 was self-executing and that the measure was validly referred to the voters of the Tenth Judicial District because its electors are the same electors as those of Pueblo County. The court further held that for those judicial districts which encompass more than one county, the Board of County Commissioners for each county within the judicial district would have to agree to refer such a measure to their respective voters.

In March 2003, the Secretary filed a notice of appeal seeking reversal of the district court's determination that the Secretary must recognize the results of the election because the Board had authority to refer the measure. Sandstrom also filed a notice of appeal in March 2003, seeking reversal of the court's holding that district attorneys are subject to term limits under section 11. The parties filed a joint petition for a writ of certiorari with this court pursuant to C.A.R. 50. We granted certiorari and now affirm the ruling of the district court.

## II. District Attorneys and Term Limits under Section 11

Section 11 applies only to "nonjudicial elected official[s]." Colo. Const. art. XVIII, § 11(1). Such officials must belong to a "county, city and county, city, town, school district, service authority, or any other political subdivision" or be a member of the state board of education or the governing board of a state institution of higher education. *Id.* District attorneys are elected to serve within a judicial district by the voters of that judicial district. Colo. Const. art. VI, § 13. Thus, in order to determine if district attorneys are subject to the term limits of section 11, we must decide two questions: whether a district attorney is a "nonjudicial elected official" and whether judicial districts belong to any of the categories of government entities enumerated in section 11. We find that district attorneys are "nonjudicial elected officials" and that judicial districts are a political subdivision of the state. We therefore hold that district attorneys are subject to the term limits of section 11.

### A. District Attorneys Are Nonjudicial Elected Officials

We begin our analysis by noting that the court's duty in interpreting a constitutional amendment is to give effect to the electorate's intent in enacting the amendment. *In re Interrogatories Relating to the Great Outdoors Colorado Trust Fund,* 913 P.2d 533, 538 (Colo.1996). Courts must give words their ordinary and popular meaning in order to ascertain what the voters believed the amendment to mean when they adopted it. *Havens v. Bd. of County Comm'rs,* 924 P.2d 517, 522 (Colo.1996). Courts should not engage in a narrow or technical construction of the initiated amendment if doing so would contravene the intent of the electorate. *Zaner v. City of Brighton,* 917 P.2d 280, 283 (Colo.1996). Thus, when the language of an amendment is clear and unambiguous, the amendment must be enforced as written. *Great Outdoors Colorado Trust Fund,* 913 P.2d at 538. Language in an amendment is ambiguous if it is "reasonably susceptible to more than one interpretation." *Zaner,* 917 P.2d at 283. If the intent of the voters

cannot be discerned from the language, "courts should construe the amendment in light of the objective sought to be achieved and the mischief to be avoided by the amendment." *Id.* Courts may determine this "by considering other relevant materials such as the ballot title and submission clause and the biennial 'Bluebook,' which is the analysis of ballot proposals prepared by the legislature." *In re Submission of Interrogatories on House Bill 99–1325,* 979 P.2d 549, 554 (Colo. 1999).

Turning to the issue at hand, we must first interpret the term "nonjudicial elected official." Black's Law Dictionary defines "judicial" as "[b]elonging to the office of a judge; as judicial authority. Relating to or connected with the administration of justice; as a judicial officer." *Black's Law Dictionary* 846 (6th ed.1991).[5] An "official" is an "officer." *Id.* at 1084. "Judicial officer" is defined as "[a] judge or magistrate." *Id.* at 848. Colorado courts have followed this definition, and held that only judges are judicial officers. *See In re Title, Ballot Title and Submission Clause, and Summary for 1997–1998 # 64,* 960 P.2d 1192, 1199–1200 (Colo. 1998) (declaring that the term "judicial officer" is reserved solely for judges); *People v. Proffitt,* 865 P.2d 929, 933 (Colo.App.1993) (noting that "judicial officer" refers to judges, while the term "officers of the court" refers to a broader group, including attorneys, investigators, and other employees of the court). Furthermore, we have consistently held that district attorneys are neither a "judicial officer" nor a member of the judiciary. *E.g. Beacom v. Bd. of County Comm'rs,* 657 P.2d 440, 445 (Colo.1983) ("[T]he district attorney . . . is not a member of the judiciary. . . . [T]he district attorney is an executive officer of the state."); *People v. District Court,* 632 P.2d 1022, 1024 (Colo. 1981) ("[A] district attorney . . . is not a judicial officer nor a part of the judicial branch of government. The district attorney belongs to the executive branch of government."). Because a district attorney is not a judicial officer, but is undoubtedly an elected official, the plain meaning of "nonjudicial elected official" encompasses district attorneys.

Sandstrom, however, argues that "nonjudicial elected official" does not include district attorneys, placing great weight upon the fact that the constitution establishes three branches of government, with district attorneys defined in Article VI, the Judicial Department. Colo. Const. art. VI, § 13. He further notes that district attorneys were the only constitutional officers not term-limited by the 1990 amendment, and that section 11 is placed in Article XVIII of the constitution, entitled "Miscellaneous." Thus, in Sandstrom's view, the fact that section 11 makes no direct reference to district attorneys or Article VI indicates that the drafters of section 11 did not intend for district attorneys to be term-limited. Sandstrom claims to find support for this conclusion by noting that other state officers, namely members of the state board of education and members of the governing board of a state institution of higher education, are directly named in section 11, and that the drafters of section 11 could have also named district attorneys had they so desired. We are not persuaded.

Sandstrom's reliance on the supposed intent of the drafters of section 11 is misplaced. The intent of the drafters, not expressed in the language of the amendment, is not relevant to our inquiry. *See In re Interrogatories Relating to the Great Outdoors Colorado Trust Fund,* 913 P.2d 533, 540 (Colo.1996) ("When courts construe a constitutional amendment that has been adopted through a ballot initiative, any intent of the proponents that is not adequately expressed in the language of the measure will not govern the court's construction of the amendment."). Furthermore, if district attorneys were not term-limited, they would be the only nonjudicial elected officials in Colorado not covered by term limits. Nothing in section 11, and nothing in the history of Colorado term limits in general, indicates such a purpose to treat district attorneys differently than all other elected officials. Thus, Sandstrom's argu-

---

**5.** The sixth edition of Black's Law Dictionary is cited here because it was the most current edition at the time section 11 was enacted.

ments here are precisely the "narrow or technical construction[s]" that must be avoided because they "would contravene the intent of the electorate" as expressed in the plain meaning of section 11. *See Zaner v. City of Brighton,* 917 P.2d 280, 283 (Colo.1996).

## B. Judicial Districts Are Political Subdivisions of the State

Having concluded that a district attorney is a "nonjudicial elected official," we must also determine whether judicial districts are political subdivisions of the state.[6] The sixth edition of Black's Law Dictionary defines "political subdivision" as "[a] division of the state . . . for purposes of carrying out a portion of those functions of a state which by long usage and inherent necessities of government have always been regarded as public." *Black's Law Dictionary* 1159 (6th ed.1991). Judicial districts and district attorneys undoubtedly carry out functions which "have always been regarded as public." A more recent edition of Black's Law Dictionary defines "political subdivision" more narrowly: "A division of a state that exists primarily to discharge some function of local government." *Black's Law Dictionary* 1179 (7th ed.1999). We hold that by its plain meaning under either definition, "any other political subdivision" encompasses judicial districts.

Each judicial district represents a finite geographical area, and exists to provide judicial services to residents of that district or those who have transacted business in that district. Colo. Const. art. VI, §§ 9–10. A district attorney is empowered to appear "in behalf of the state and *the several counties of his district*" in any proceeding in district court "*in any county within his district* wherein the state or the people thereof or *any county of his district* may be a party." § 20–1–102(1)(a), 6 C.R.S. (2003) (emphasis added). A district attorney is also empowered to advise and represent county officers within his district. *See* § 20–1–105, 6 C.R.S. (2003). Although district attorneys are state officers charged with prosecuting violations of state law, *see Beacom v. Bd. of County Comm'rs,* 657 P.2d 440, 445 (Colo. 1983); § 20–1–102, 6 C.R.S. (2003), they are elected solely by the voters of their judicial district. Colo. Const. art. VI, § 13. Other than impeachment and removal by the General Assembly, *see People v. Losavio,* 199 Colo. 212, 606 P.2d 856, 858 (1980), district attorneys answer only to the voters in their judicial district. Thus, they exhibit "a fundamental characteristic of a political subdivision-political control by some community other than the state as a whole." *Sturdevant v. Paulsen,* 218 F.3d 1160, 1170 (10th Cir.2000). We therefore hold that the plain meaning of "any other political subdivision" in section 11 encompasses judicial districts.

Sandstrom argues that judicial districts are not included under the phrase "any other political subdivision" in section 11. To support his conclusion, Sandstrom relies on the maxim of *ejusdem generis.* This rule of construction provides that "when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." *Black's Law Dictionary* 535 (7th ed.1999). Applying this rule, Sandstrom claims that "any other political subdivision of the State of Colorado," the general words, must belong to the same general kind as the specific words, "any county, city and county, city, town, school district, [or] service authority." Because the specific words enumerate governmental entities which have governing boards and the power to tax or the power to incur debt, Sandstrom believes that "any other political subdivision" must contain the same characteristics.

Again, Sandstrom's argument calls for a "narrow or technical construction" that "would contravene the intent of the electorate." *Zaner v. City of Brighton,* 917 P.2d 280, 283 (Colo.1996). Such a construction may not be used to defeat the plain meaning of language in the amendment. Thus, Sand-

---

**6.** District attorneys serve within judicial districts. Colo. Const. art. VI, § 13. Because the other categories of government entities enumerated in section 11 clearly do not apply to judicial districts, we limit our discussion here to whether a judicial district is a political subdivision of the state.

strom's use of *ejusdem generis* is inapposite. *See People v. San Emerterio*, 839 P.2d 1161, 1166 (Colo.1992) (*ejusdem generis* "may not be used to defeat the obvious purpose of legislation") (internal quotations omitted); *S.A.S. v. District Court*, 623 P.2d 58, 62 (Colo.1981) (noting that *ejusdem generis* "should not be applied in a manner that hinders the attainment of the objectives contemplated by the statutory scheme").

■ Moreover, our conclusions here today are bolstered by the history of the drafting of section 11, which indicates precisely the opposite of what Sandstrom claims. While the intent of the drafters is not relevant, *see In re Interrogatories Relating to the Great Outdoors Colorado Trust Fund*, 913 P.2d 533, 540 (Colo.1996), the history of an amendment's drafting may be relevant because "[t]he legislative council's interpretation, while not binding, provides important insight into the electorate's understanding of the amendment when it was passed." *Carrara Place, Ltd. v. Arapahoe County Bd. Of Equalization*, 761 P.2d 197, 203 (Colo.1988). A draft of every initiative petition for a proposed amendment to the constitution must be submitted to the Legislative Council and the Office of Legislative Legal Services for review and comment. § 1–40–105(1), 1 C.R.S. (2003). The purpose of this review is to ensure that the proposed amendment is written "in plain, nontechnical language and in a clear and coherent manner using words with common and everyday meaning which are understandable to the average reader." *Id.* This process also "permits the proponents to benefit from the experience of experts in constitutional and legislative drafting, and allows the public to understand the implications of a proposed initiative at an early stage in the process." *In re Title, Ballot Title and Submission Clause, and Summary for 1999–00 # 256*, 12 P.3d 246, 251 (Colo. 2000).

The supporters of the proposed Amendment 17, ultimately codified in the constitution as section 11, submitted their draft for review and comment on two occasions. The pertinent part of the first submission read as follows: "[N]o nonjudicial elected official of any county, city and county, city, town, school district, service authority or any other political subdivision of the state of Colorado shall serve more than two consecutive terms in office...." Op. Att'y Gen. No. 2000–2 (Feb. 9, 2000). The Legislative Council commented on the language as follows: "If this measure passes, it appears that the only elected officials in Colorado not subject to term limits would be members of the board of regents of the University of Colorado and members of the state board of education.... Is this the intent of the proponents?" *Id.* In response to these comments, the proponents submitted a revised amendment that added "board of regents of any state university." *Id.* The Legislative Council replied: "If this measure passes, it appears that the only elected officials in Colorado not subject to term limits would be members of the state board of education.... Is this the intent of the proponents?" *Id.* The proponents again changed the amendment, adding "no member of the state board of education."[7] *Id.*

■ Thus, contrary to Sandstrom's interpretations, it appears that the drafters of section 11 believed that the proposed amendment would cover every elected official in Colorado not already term-limited. More importantly, the Legislative Council also believed that every elected official in Colorado would be term-limited. Although the intent of the drafters is not relevant to our inquiry, *see Great Outdoors Colorado Trust Fund*, 913 P.2d at 540, the Legislative Council's position is quite relevant. *See Carrara Place*, 761 P.2d at 203. Therefore, even if we deemed the terms "nonjudicial elected official" and "any other political subdivision" to be ambiguous, the intent of the voters who enacted section 11 was clear. In enacting the amendment, they intended every elected official in Colorado to be covered by term limits. We therefore hold that district attorneys are subject to term limits under section 11.

**7.** The precise language approved by the voters, although slightly modified from that quoted here, did not differ substantively from this draft.

### III. The Board's Authority to Refer a Term Limits Measure to the Voters of the Tenth Judicial District

Section 11(2) allows for the voters of any political subdivision to "lengthen, shorten or eliminate the limitation on terms of office imposed by this Section 11." Thus, the voters of the Tenth Judicial District unquestionably had the power to eliminate term limits for the office of district attorney. However, that is not the question before us today. Section 11 is silent as to how the voters of a political subdivision may exercise this power. Thus, the question before us is whether section 11 is self-executing, requiring no further action by the legislature to implement its provisions. If it is self-executing, we must also answer how section 11(2) is to be implemented with respect to district attorneys. In other words, we must decide whether the Board had the authority to refer a measure on term limits to the voters of the Tenth Judicial District. Determination of this issue is further complicated by the fact that most judicial districts are not comprised of a single county. Thus, if the Board had the authority to refer such a measure, we must also determine the mechanism by which multi-county judicial districts may vote on similar measures.[8] We hold that section 11 is entirely self-executing, and that the Board had the implied authority to refer a term limits measure to the voters of the Tenth Judicial District. We further hold that for a term limits measure in a multi-county judicial district, the board of county commissioners for each county comprising the judicial district must refer a measure to their voters.

■ A constitutional provision is self-executing when the provision appears to take immediate effect and no further action by the legislature is required to implement the right given. *Town of Lyons v. City of Longmont*, 54 Colo. 112, 117, 129 P. 198, 200 (1913). Thus, we have said that "if a constitutional provision. is complete in itself, it executes itself." *Id.* Other states have applied similar

tests. *E.g., Chesney v. Byram*, 15 Cal.2d 460, 101 P.2d 1106, 1107 (1940) ("[T]he constitutional provision . . . is self-executing; . . . it required no legislative enactment to put it into effect."); *State ex rel. Russell v. Bliss*, 156 Ohio St. 147, 101 N.E.2d 289, 291 (1951) ("[A] constitutional provision is self-executing if there is nothing to be done by the legislature to put it in operation."). Ultimately, the question of whether a constitutional provision is self-executing is one of intent. *E.g., Rockefeller v. Hogue*, 244 Ark. 1029, 429 S.W.2d 85, 90 (1968) (noting that "the controlling [test] is whether the people, in adopting this section, intended that it be self-executing"); *Wolverine Golf Club v. Hare*, 24 Mich.App. 711, 180 N.W.2d 820, 827 (1970) (declaring that "[t]he question whether a constitutional provision is self-executing is ultimately one of intention" of the framers of the constitution), *aff'd*, 384 Mich. 461, 185 N.W.2d 392 (1971).

■ Constitutional provisions are presumed to be self-executing. *E.g., Gray v. Bryant*, 125 So.2d 846, 851 (Fla.1960) (noting that "the modern doctrine favors the presumption that constitutional provisions are intended to be self-operating"); *Russell*, 101 N.E.2d at 291 (stating that "the presumption now is that all provisions of the constitution are self-executing"); *Beatty v. Wittekamp*, 171 S.C. 326, 172 S.E. 122, 125 (1933) (declaring that "[t]he general presumption of law is that all constitutional provisions are self-executing"); *see generally* 16 Am.Jur.2d *Constitutional Law* § 100 (1998). This presumption is even more appropriate when considering initiated amendments. *Rockefeller*, 429 S.W.2d at 88 ("The impact of this presumption should be especially great where the provision in question was initiated by the people.").

■ The provision in question may still be self-executing even though further legislation may clarify or facilitate the execution of the provision.[9] *See Yenter v. Baker*, 126

---

8. Each judicial district is "bounded by county lines." Colo. Const. art. VI, § 10(1). Thus, every judicial district is made up of one or more counties, and no county spans more than one judicial district.

9. Only legislation which "directly or indirectly limits, curtails or destroys the rights given by those provisions is invalid as violative of the rights reserved by the people to themselves." *Colorado Project–Common Cause v. Anderson*, 178 Colo. 1, 5, 495 P.2d 220, 222 (1972).

Colo. 232, 237, 248 P.2d 311, 314 (1952) (noting that legislation is permissible if it furthers the purpose or facilitates the enforcement of a self-executing constitutional provision). A provision that is self-executing "must be obeyed *unless obedience is impossible.*" *People v. Bradley,* 66 Colo. 186, 188, 179 P. 871, 872 (1919) (emphasis added).

■ Section 11(2) states that "[t]he voters of any such political subdivision may lengthen, shorten or eliminate the limitations on terms of office imposed by this Section 11." The provision does not call for any further action by the legislature. *Cf. People v. Lindsley,* 37 Colo. 476, 479–80, 86 P. 352, 352–53 (1906) (finding that further action was required by the legislature because while the amendment in question created the office of county attorney, it indicated that the office "may be elected or appointed, *as shall be provided by law*") (emphasis added). Indeed, nothing in the language of the amendment or in the history of term limits in general in Colorado indicates an intent on the part of the voters · to require further action by the legislature for implementation of section 11(2). Thus, the presumption in favor of self-execution is not overcome. The people of Colorado clearly intended to grant themselves the power to modify the term limits of those officials covered under section 11(1) without further action by the legislature. We therefore hold that the powers granted under section 11(2) are intended to be self-executing.

However, our inquiry does not end here. Section 11(2) expresses no mechanism by which it may be implemented. We must therefore determine precisely how section 11(2) executes itself with respect to district attorneys. Only if implementation is impossible will we find that it is not self-executing. *Bradley,* 66 Colo. at 188, 179 P. at 872. We hold that implementation of 11(2) is not impossible, and that in the absence of more explicit statutory procedures, the voters of Colorado impliedly authorized the boards of

county commissioners to refer term limits measures regarding district attorneys to the voters of their respective judicial districts.[10]

■ The voters of Colorado reserved to themselves the right to modify or abolish the term limits imposed under section 11(1), and the voters of the Tenth Judicial District voted to eliminate term limits for their district attorney. "[T]he right to vote is a fundamental right of the first order." *Erickson v. Blair,* 670 P.2d 749, 754 (Colo.1983). Absent a showing of fraud, undue influence, or intentional wrongdoing, the court should be wary of invalidating election results:

> 'The right to vote is the right to participate; it is also the right to speak, but more importantly the right to be heard. We must tread carefully on that right or we risk the unnecessary and unjustified muting of the public voice. By refusing to recognize an otherwise valid exercise of the right of a citizen to vote for the sake of sacred, unyielding adherence to statutory scripture, we would in effect nullify that right.'

*Id.* (quoting *Boardman v. Esteva,* 323 So.2d 259, 263 (Fla.1975)). An election should not be enjoined or invalidated unless "the true will of the voting public [is not] reflected, or ... a statutory requirement has not been substantially complied with by those responsible for calling, scheduling, and conducting the election." *Crowe v. Wheeler,* 165 Colo. 289, 294, 439 P.2d 50, 52 (1968). It appears indisputable to us that the true will of the electors of the Tenth Judicial District is reflected in their vote to eliminate term limits for the district attorney of the Tenth Judicial District, a right they had reserved to themselves. Furthermore, no allegations of electoral impropriety have been made. Thus, we are left solely with the question of whether the Board is responsible for calling such an election.

■ District attorneys and judicial districts do not have a clearly identified governing body explicitly authorized to call elections. Colo. Const. art. VI, §§ 10, 13; § 1–

---

**10.** We note that the legislature may replace the procedure that we sanction today with one of its own choosing, so long as the procedure it installs further facilitates, rather than hinders or limits,

the people's exercising of their rights under section 11(2). *See Yenter,* 126 Colo. at 237, 248 P.2d at 314; *Colorado Project–Common Cause,* 178 Colo. at 5, 495 P.2d at 222.

1–104(18), 1 C.R.S. (2003). Furthermore, district attorneys and their employees are not county employees. *Anderson v. Adams County*, 41 Colo.App. 441, 443, 592 P.2d 3, 4 (1978). However, the business of the district attorney is intertwined with the business of the county.[11] The counties of a judicial district are responsible for funding both the expenses of the district attorney's office and a portion of the district attorney's salary. §§ 20–1–302, 306, 6 C.R.S. (2003). The counties of a judicial district are also entirely responsible for funding any employees of the district attorney's office. §§ 20–1–208, 209, 6 C.R.S. (2003). The board of county commissioners retains "the exclusive power to adopt an annual budget which is binding upon the district attorney and presumptively valid." *Beacom v. Bd. of County Comm'rs*, 657 P.2d 440, 445 (Colo.1983). The board of county commissioners is thus the governing body of the district attorney for the limited purposes of adopting the district attorney's budget. *See id.;* §§ 29–1–102(13), 103, 104, 9 C.R.S. (2003); § 30–11–107(2), 9 C.R.S. (2003).

The county is also required to "provide a suitable courthouse" and security for that courthouse. § 30–11–104(1)(a), 9 C.R.S. (2003); *State v. Bd. of County Comm'rs*, 897 P.2d 788, 789 (Colo.1995). The county is given the power of eminent domain to acquire land or buildings necessary "for the provision of court and district attorney facilities." § 30–11–104(2), 9 C.R.S. (2003). The district attorney is required to appear on behalf of the counties of his district, § 20–1–102, 6 C.R.S. (2003); to provide opinions on matters of law to county officers, § 20–1–105(1), 6 C.R.S. (2003); and to represent, upon request by the board of county commissioners, any county officer in any civil matter directly related to that officer's official duties, *id.* at § 105(2). Thus, in many respects, the business of the district attorney is the business of the county and the board of county commissioners, even if the board of county commissioners does not directly supervise the district attorney.

A board of county commissioners has authority to refer measures to its electors as authorized by statute or the constitution. § 30–11–103.5, 9 C.R.S. (2003). Although some judicial districts span more than one county, the electors of a county are all electors of the same judicial district. *See* Colo. Const. art. VI, § 10(1). The voters of Colorado reserved to themselves the right to modify term limits for all officials covered under section 11(1), including term limits of district attorneys, and intended section 11(2) to be self-executing. However, no explicit statutory mechanism exists for the voters of a judicial district to modify term limits of district attorneys. In consideration of the importance of implementing the intent of the voters who initiated the amendment unless such implementation is impossible, and in the absence of an explicit statutory mechanism, we therefore hold that the voters impliedly authorized the boards of county commissioners to refer such term limits measures to the voters of their respective judicial districts. For judicial districts that span more than one county, the board of county commissioners of each county must refer a measure to their voters.

We are mindful that our holding here today is one of first impression. However, any other holding would exalt form over substance, and would frustrate not only the intent of the voters of the Tenth Judicial District regarding the measure before us today, but also the intent of the people of Colorado in enacting section 11. The people of Colorado clearly intended to reserve the power to lengthen, shorten, or eliminate term limits for all officials covered under section 11(1), without the need for further legislative action. Our holding today serves to effectuate that intent.

The judgment of the district court is affirmed.

Justice HOBBS concurs in the judgment, and Justice COATS joins in the concurrence.

---

11. Any business of the county is the business of the board of county commissioners of that county. § 30–11–103, 9 C.R.S. (2003) ("The powers of a county ... shall be exercised by a board of county commissioners therefore.").

Justice HOBBS, concurring in the judgment.

I concur in the court's judgment, but for different reasons. I agree that the current District Attorney for the Tenth Judicial District is not barred from seeking re-election to that office. However, I reach this conclusion because, in my view, Colorado's constitution does not term limit any district attorney from seeking re-election. My analysis proceeds from the text of Article XVIII, section 11, subsection (1) and the organization of the Colorado Constitution.

The text of the amendment limits the terms of non-judicial elected officials of local governments and certain other designated officials:

**Elected government officials—limitations on terms.**

(1) In order to broaden the opportunities for public service and *to assure that elected officials of governments are responsive to the citizens of those governments, no nonjudicial elected officials of any county, city and county, city, town, school district, service authority, or any other political subdivision of the State of Colorado,* no member of the state board of education, and no elected member of the governing board of a state institution of higher education *shall serve more than two consecutive terms in office,* except that with respect to terms of office which are two years or shorter in duration, no such elected official shall serve more than three consecutive terms in office. (emphasis added).

In my view, the term "nonjudicial official" refers to officers of the executive and legislative branches of Colorado local governments. Article VI, section 13 of the Colorado Constitution places district attorneys in the *judicial* branch of *state* government:

**District attorneys—election—term—salary qualifications.** *In each judicial district there shall be a district attorney* elected by the electors thereof, whose term of office shall be four years. District attorneys shall receive such salaries and perform such duties as provided by law. No person shall be eligible to the office of district attorney who shall not, *at the time of his election possess all the qualifications of district court judges as provided in this article.* All district attorneys holding office on the effective date of this amendment shall continue in office for the remainder of the respective terms for which they were elected or appointed. (emphasis added).

The 1994 amendment to the constitution therefore does not provide term limits for district attorneys, and the Colorado electorate has never specifically identified the office of district attorney as being term limited. Nonetheless, the Majority holds that Article XVIII, section 11, subsection (1) effectuates this result—not by identifying district attorneys as term-limited officers—but on the grounds that a judicial district is a "political subdivision" and district attorneys—while each is an officer of his or her judicial district—are not judicial officers of the judicial district. Maj. op. at 655–656.

The amendment does not itself define "political subdivision," and the majority does not cite to any constitutional or statutory provision, or any decision of our court, that classifies a judicial district as a political subdivision. Typically, a political subdivision is an entity of local government that has a governing body, depends on local tax revenue for its funding, and can incur debt. As Mr. Sandstrom argues, maj. op. at 656–657, Article XVIII, section 11 follows this very pattern by enumerating examples of what it means by a "political subdivision," namely a "county, city and county, city, town, school district, service authority." Each has a governing body, depends on local tax revenue, and can incur debt. By accepted principles of interpretation, the meaning of an undefined general term being used in a particular context is limited according to the nature of the specific examples to which it applies itself.

Rather than limiting the term "political subdivision" according to its actual usage in the amendment, the majority simply chooses a broader dictionary definition and concludes that giving the term meaning according to its context would defeat the "plain meaning" of the language. *See* maj. op. at 656. In a similar fashion, it again turns to the dictio-

nary and case law from inapposite contexts, to locate district attorneys in the executive, rather than the judicial, branch of government. Maj. op. at 654–656. The fundamental law being amended by this provision, however, is the state constitution, and it is beyond any dispute that this very document creates the office of district attorney in Article VI, defining district attorneys as officials of the judicial branch of government.

In my view, judicial districts are *sui generis* in the design of the separation of powers. In contrast to political subdivisions, judicial districts have no local governing body to which their officers—judges and district attorneys—are responsible; judicial district funds that pay salaries are predominately state funds appropriated by the General Assembly; and judicial districts may not incur debt. They exist by reason of Article VI, section 10 to deliver the services of the third branch of government—the administration of justice—to the citizens of Colorado. As part of this basic design, judges hear criminal cases; district attorneys serve an executive function within the judicial branch by bringing those cases to the courts.

By operation of the constitution and implementing legislation, the services of the judicial branch of state government therefore include those provided by both judges and district attorneys. Article VI, section 13 requires that district attorneys possess all of the qualifications of district judges prescribed by the Colorado Constitution. As officers of the court they are subject to the supervision and regulation of the supreme body of the judicial branch. By statute they are obliged to appear, not only on behalf of the several counties of their respective districts, but on behalf of the state as well. *See* § 20–1–102(1), 6 C.R.S. (2003). Both judges and district attorneys are provided salaries, retirement, and insurance by the state.

Although the District Attorney has executive functions, the District Attorney is an officer of the judicial branch. District judges and district attorneys are both state officers, elected by the registered voters within the boundaries of judicial districts. But, within the judicial district, judges and the district attorney serve very different functions. A judge alone possesses the adjudicatory power. The district attorney prosecutes criminal cases and may represent counties in court. A judge clearly cannot direct the district attorney to bring or not to bring certain criminal charges; this function is executive in nature. *See, e.g., People v. District Court,* ·186 Colo. 335, 338, 527 P.2d 50, 52 (1974). Nevertheless, as even the majority acknowledges, maj. op. at 659, the constitution and implementing laws of this jurisdiction provide that district attorneys are officials of judicial districts and perform executive duties solely within the purview of the judicial branch of government.

In view of this, I conclude that limitations on the terms of office for "nonjudicial elected officials" of "political subdivisions" in Article XVIII, section 11 apply only to executive and legislative officials of local governments that have governing bodies, depend on local tax revenue, and can incur debt. This accords with both the widely understood content of what constitutes a political subdivision and the specific usage of that term in the constitutional amendment. Voters can readily identify these entities because their local property tax bills identify the governmental entities that receive a portion of their tax payments. Judicial districts are not within this identification.

Construing the above-cited constitutional provisions and laws together, I conclude that district attorneys are not term limited by any present provision of the Colorado Constitution, and they may hold office for as many consecutive four year terms under Article VI, section 13 as the voters of the judicial district may elect them to.

The Majority places reliance on the voters' rejection of a year 2002 ballot measure to exempt district attorneys from term limits. Maj. op. at 652. However, because the measure before the voters phrased the issue as proposing the exemption of district attorneys from the existing term limit constitutional provisions, the rejection of this proposition should be seen as the voters stating that, if this is the law, they preferred not to change it. In any event, the 2002 vote should not be read as any sort of legislative-type history on

the legal effect of the pre-existing term limit provisions.

As to the Colorado Attorney General's opinion that led to the 2002 ballot proposal, *see* Legislative Council of the Colorado General Assembly, *2002 Ballot Information Booklet, An Analysis of Statewide Ballot Issues and Recommendations on Retention of Judges,* Research Publication No. 502–10 at 22, Op. Att'y Gen. No. 2000–2 (Feb. 9, 2000), I conclude that the attorney general erred in opining that district attorneys are term limited by the pre-existing term constitutional provisions, namely those of Article XVIII, section 11. The resolution of this constitutional issue properly resides in this court, *Board of County Comm'rs v. Vail Assoc.,* 19 P.3d 1263, 1272 (Colo.2001), of course, and the majority opinion resolves this question in favor of the attorney general's view.

Nonetheless, in my opinion, the better construction of the present constitution is that district attorneys are not term limited. In 1990, the state constitution was amended to impose term limits on statewide officials. These enumerated officials were expressly limited to those of the executive and legislative branches of state government. The judicial branch was intentionally omitted. In 1994, the state constitution was again amended, extending term limits to governmental officials of political subdivisions and certain other local officials. Again, judicial officers expressly were omitted. The manifest purpose of the second amendment was not to extend term limits to all other elected officials in the state but rather to extend terms limits to executive and legislative officials of select local governmental bodies. Because the office of district attorney is created by Article VI of the state constitution and located in the judicial branch of state government by that fundamental law, it was not intended to be term-limited by either amendment. In my view, it is unsurprising that district attorneys do not fit comfortably within the allowance for local exemption from term limits since they hold a state office that was intentionally excluded from term limits in the first instance.

Accordingly, I concur in the judgment of the court but not its reasoning.

I am authorized to say that Justice COATS joins in this concurrence.