Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 21, 2022

## 2022 CO 29

**No. 22SC78, *Chronos Builders, LLC v. Dep't of Labor*—Taxpayer's Bill of Rights—Constitutional Interpretation.**

The Paid Family and Medical Leave Insurance Act authorizes the Division of Family Medical Leave Insurance to collect a premium from employers and employees to fund a state-run paid family and medical leave insurance program. The premium is calculated as a percentage of an employee's taxable wages. The supreme court reviews whether the Division's collection of such a premium is unconstitutional under section (8)(a) of the Taxpayer's Bill of Rights, which provides that "[a]ny income tax law change . . . shall also require all taxable net income to be taxed at one rate, . . . with no added tax or surcharge." The court holds that this language of section (8)(a) precludes only added taxes and comparable tax-like surcharges to taxable net income imposed in connection with a change to income tax law. Because the Paid Family and Medical Leave Insurance Act is not an income tax law, and because in any event, the premium collected is a fee and not an impermissible added tax or tax-like surcharge, the Division's

collection of the premium does not violate section (8)(a). Accordingly, the court

affirms the district court's order granting a motion to dismiss for failure to state a

claim.

**2022 CO 29**

**Supreme Court Case No. 22SC78**
*C.A.R. 50 Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 22CA91
District Court, City and County of Denver, Case No. 21CV32203
Honorable Michael A. Martinez, Chief Judge

**Petitioner:**

Chronos Builders, LLC,

v.

**Respondent:**

Department of Labor and Employment, Division of Family and Medical Leave Insurance.

**Judgment Affirmed**
*en banc*
June 21, 2022

**Attorneys for Petitioner:**
Advance Colorado
Daniel E. Burrows
    *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Noah C. Patterson, Assistant Solicitor General
Davin W. Dahl, Senior Assistant Attorney General
Shelby A. Krantz, Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Amici Curiae Good Business Colorado, Small Business Majority, and Eight Colorado Businesses:**
Tierney Lawrence, LLC
Martha M. Tierney
 *Denver, Colorado*

**Attorneys for Amicus Curiae Independence Institute:**
Independence Institute
David B. Kopel
 *Denver, Colorado*

Westfall Law, LLC
Richard A. Westfall
 *Denver, Colorado*

**Attorneys for Amici Curiae Labor and Policy Organizations and Ballot Petition Filers:**
A Better Balance
Natalie Petrucci
 *Denver, Colorado*

**Attorneys for Amicus Curiae National Taxpayers Union Foundation:**
Tyler Martinez
 *Washington, District of Columbia*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE HART, JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶1     In the November 2020 election, Colorado voters approved Proposition 118, which established the Paid Family and Medical Leave Insurance Act ("the Act"). The Act created an enterprise called the Division of Family and Medical Leave Insurance ("the Division") and authorized the Division to collect a premium from employers and employees (calculated as a percentage of the employee's taxable wages) to fund a state-run paid family and medical leave insurance program.

¶2     This case concerns whether the Division's collection of premiums under the Act violates section (8)(a) of the Taxpayer's Bill of Rights ("TABOR"), which provides, as relevant here, that "[a]ny income tax law change . . . shall also require all taxable net income to be taxed at one rate, . . . with no added tax or surcharge." Colo. Const. art. X, § 20(8)(a). Specifically, we are asked to determine whether the premium is an unconstitutional "added tax or surcharge" on income that is not "taxed at one rate." And, if so, we are asked whether the Act's funding mechanism is severable from the rest of the Act.

¶3     We granted certiorari review under C.A.R. 50. We conclude that the premium collected by the Division does not implicate section (8)(a) because the relevant provision of that section concerns changes to "income tax law." The Act, a family and medical leave law, is not an income tax law or a change to such a law. Moreover, the premium collected pursuant to the Act is a fee used to fund specific

3

services, rather than a tax or comparable surcharge collected to defray general government expenses. We therefore hold that the Act does not violate section (8)(a). Accordingly, we affirm the judgment of the district court.

## I. Proposition 118: The Paid Family and Medical Leave Insurance Act

¶4 Before the passage of Proposition 118 in the November 2020 election, federal and state law provided minimal leave requirements for Colorado businesses. The federal Family and Medical Leave Act allows eligible employees to take up to twelve weeks of unpaid leave per year under limited circumstances. 29 U.S.C. § 2612(1). Colorado law, for its part, required certain employers to provide one hour of sick leave to employees for every thirty hours worked. § 8-13.3-403, C.R.S. (2021).

¶5 Proposition 118 aimed to increase paid leave opportunities and provide job protections for employees who take family or medical leave. *See* Legis. Council, Colo. Gen. Assemb., Rsch. Pub. No. 748-1, *2020 State Ballot Information Booklet* 53 (2020). Specifically, Proposition 118 established the Act, which created a paid family and medical leave insurance program to provide "a necessary safety net for all Colorado workers when they have personal or family caregiving needs." § 8-13.3-502(3), C.R.S. (2021). The Act created the Division, a statewide paid family

4

and medical leave insurance enterprise,[1] to administer the program. §§ 8-13.3-502(4), -508(1), C.R.S. (2021). Under the Act, a covered employee has a right to take paid family and medical leave, and to receive family and medical leave insurance benefits while taking such leave, if the employee:

- Because of birth, adoption or placement through foster care, is caring for a new child during the first year after the birth, adoption or placement of that child;

- Is caring for a family member with a serious health condition;

- Has a serious health condition;

- Because of any qualifying exigency leave;

- Has a need for safe leave.

§ 8-13.3-504(2), C.R.S. (2021).

¶6 The Act requires employers to provide medical and family insurance to their employees. Employers can do so by obtaining coverage under a public insurance option created by the Division or under a private plan that provides the "same rights, protections and benefits" as the public option. § 8-13.3-521(1), C.R.S. (2021). If employers opt not to obtain private coverage, the Division is authorized to collect "premiums" from employers and employees starting in January 2023 to

---

[1] Under TABOR, an enterprise is "a government-owned business authorized to issue its own revenue bonds and receiving under 10% of annual revenue in grants from all Colorado state and local governments combined." Colo. Const. art. X, § 20(2)(d).

finance the "pay[ment of] family and medical leave insurance benefits and associated administrative and program costs." § 8-13.3-502(4)(b). The Act expressly characterizes premiums as "fees and not taxes." § 8-13.3-507(7), C.R.S. (2021).

¶7     Premiums are calculated as a percentage of an employee's taxable wages to ensure that the funding collected can adequately support the cost of providing wage-replacement benefits. For the first two years of the program, premiums are set at 0.9% of employee wages. § 8-13.3-507(3)(a). In subsequent years, the premiums can be raised but may not exceed 1.2% of employee wages. § 8-13.3-507(3)(b). The portion of the premium employers must pay varies based on how many individuals they employ. Employers with nine or fewer employees must only pay 50% of the premium required for an employee and may deduct up to that amount from that employee's wages. § 8-13.3-507(5). Employers with ten or more employees, on the other hand, must pay the full premium but may deduct up to 50% of the premium from an employee's wages. *Id.* Employees are responsible for up to 50% of the premium depending on their employer's contribution.[2]

---

[2] The Act also contains certain exemptions. For example, the Act does not require self-employed individuals to participate in the program, though they can elect to

6

¶8     All premiums collected by the Division are held in the Family and Medical Leave Insurance Fund in the State Treasury. § 8-13.3-518(1), C.R.S. (2021). Money in the fund can be used only to (1) pay revenue bonds or loans to the program, (2) reimburse employers who pay benefits directly to employees, (3) pay benefits, and (4) administer the program. *Id.* Any remaining money at the end of the fiscal year remains in the fund and does not revert to the general fund. *Id.*

## II. Facts and Procedural History

¶9     Petitioner Chronos Builders, LLC ("Chronos") is a custom home builder based in Grand Junction, Colorado. Chronos employs fewer than ten employees. In July 2021, Chronos sued the Division, arguing that the collection of premiums was unconstitutional under section (8)(a) of TABOR.[3] As relevant here, that section provides: "Any income tax law change . . . shall also require all taxable net income to be taxed at one rate, . . . with no added tax or surcharge." Colo. Const. art. X, § 20(8)(a).

---

do so if they pay 50% of the premium amount. § 8-13.3-507(4)(a). Local governments are likewise allowed to decline participation, but their employees may elect to participate anyway. § 8-13.3-522(1), (2), C.R.S. (2021).

[3] At the time it filed its complaint, Chronos employed eight persons and was considering hiring a ninth. Chronos alleged that it was hesitant to hire more than nine employees because to do so would require Chronos to have to pay a greater portion of the premiums under the Act.

7

¶10 Chronos contended that the premium was an unconstitutional "added tax or surcharge" on income and, alternatively, that the premium was not taxed "at one rate." It requested an injunction prohibiting the Division from collecting premiums. It also requested a declaration that the Act's funding mechanism cannot be severed from the statutory scheme and that therefore, the Act is unenforceable as a whole.

¶11 The Division moved to dismiss under C.R.C.P. 12(b)(5) for failure to state a claim, and the district court granted the motion. The court reasoned that the phrase "'[a]ny income tax law change' is a restrictive clause, introducing information necessary to the meaning of the last sentence in Section (8)(a)." Understood this way, the court determined that "[s]ection (8)(a) applies only to 'income tax law changes'" and, thus, only prohibits surcharges that pertain to changes in income tax law. Because the Act is a "family and medical leave law, not an income tax law," the court concluded that the Act's premium is not subject to section (8)(a).

¶12 Chronos filed a notice of appeal, and then Chronos and the Division jointly petitioned this court under C.A.R. 50 to review this case. We accepted jurisdiction.[4]

## III. Analysis

## A. Applicable Legal Standards

¶13 This case presents a question of constitutional interpretation. When interpreting constitutional amendments, this court aims to "give effect to the electorate's intent in enacting the amendment." *Davidson v. Sandstrom*, 83 P.3d 648, 654 (Colo. 2004). We first look to "the plain language of the provision, giving terms their ordinary meanings. We may also 'consider other relevant materials such as the "Blue Book," an analysis of ballot proposals prepared by the Legislative Council.'" *In re Interrogatories on Senate Bill 21-247 Submitted by Colo. Gen. Assembly*, 2021 CO 37, ¶ 30, 488 P.3d 1008, 1018 (quoting *Lobato v. State*, 218 P.3d 358, 375 (Colo. 1996)). If the language of an amendment "is clear and unambiguous, the amendment must be enforced as written." *Sandstrom*, 83 P.3d at 654. Language is unambiguous if it is not "reasonably susceptible to more than

---

[4] We issued a writ of certiorari to review the following issue:

1. Whether the Paid Family and Medical Leave Insurance Act's premium violates Section (8)(a) of TABOR.

one interpretation." *Id.* (quoting *Zaner v. City of Brighton*, 917 P.2d 280, 283 (Colo. 1996)).

¶14 The parties dispute the standard of review that should be applied when reviewing the constitutionality of a statute enacted through a citizen initiative. The Division argues, and the district court agreed, that the moving party has the burden of proving a statute's unconstitutionality beyond a reasonable doubt. *See Huber v. Colo. Mining Ass'n*, 264 P.3d 884, 889 (Colo. 2011) (This court "presume[s] legislative enactments, whether by the General Assembly or the electorate through initiative or referendum, to be constitutional."). Chronos, for its part, argues that the beyond-a-reasonable-doubt standard should apply only to a law passed by the legislature, not a statute passed through citizen initiatives, though it does not specify what standard should be applied in its place. In its view, the beyond-a-reasonable-doubt standard is a form of deference to the General Assembly as a co-equal branch of government, and no such deference is owed to a ballot initiative passed by Colorado voters. Because we would conclude that Chronos has not shown that the Act runs afoul of TABOR even under a less stringent preponderance-of-the-evidence standard, we need not, and do not, address this dispute.

10

## B. Section (8)(a) of TABOR

¶15    Chronos contends that the premiums collected by the Division are illegal "surcharge[s]" on income under section (8)(a). The last sentence of that section provides: "*Any income tax law change* after July 1, 1992 *shall also require all taxable net income to be taxed at one rate,* excluding refund tax credits or voter-approved tax credits, *with no added tax or surcharge*." Colo. Const. art. X, § 20(8)(a) (emphases added). In Chronos's view, the prohibition in section (8)(a) against added taxes or surcharges on taxable income also encompasses "fees that are imposed on income or otherwise measured as a function of income." Specifically, Chronos contends that because the Act's premiums are fees that are assessed as a percentage of employees' taxable wages, the Division's collection of premiums are unconstitutional surcharges that run afoul of section (8)(a). For several reasons, we are unpersuaded.

¶16    First, as the district court determined, section (8)(a) prohibits only added taxes or surcharges related to an "income tax law change." Construing words and phrases "according to the rules of grammar and common usage," *People v. Sprinkle*, 2021 CO 60, ¶ 22, 489 P.3d 1242, 1246, the phrase "[a]ny income tax law change" is the subject of the sentence. The concluding phrase "with no added tax or surcharge" is not unrestricted; instead, it is a prepositional phrase that modifies the subject. Simply put, "with no added tax or surcharge" refers to added taxes or

11

surcharges associated with a "change" to an "income tax law." Accordingly, a tax or surcharge that does not pertain to a change to income tax law does not run afoul of section (8)(a).

¶17 We note that our interpretation of the provision squarely aligns with the Blue Book's explanation of section (8)(a). The Blue Book placed its explanation of section (8)(a) under the heading "Prohibited Taxes" and informed voters that section (8)(a) "require[s] that any future state income tax law change have a single tax rate with no added surcharge." Legis. Council, Colo. Gen. Assemb., Rsch. Pub. No. 369, *An Analysis of 1992 Ballot Proposals* 5 (1992). This succinct explanation, which informed Colorado voters' understanding of the constitutional amendment, is clear. If the state makes a change to income tax law, it must tax at a single rate, and it cannot add a surcharge. If a surcharge is not associated with an income tax law change, then section (8)(a) is inapplicable.

¶18 Further, Chronos's reading of section (8)(a) divorces the term "surcharge" from the broader context of the provision. Chronos contends that "surcharge" should be construed broadly enough to include any fee on income. However, read in its entirety, section (8)(a) is only concerned with taxes. Indeed, section (8)(a) refers to a variation of the term "tax" on twelve occasions:

> **(8) Revenue limits**. (a) New or increased transfer *tax* rates on real property are prohibited. No new state real property *tax* or local district income *tax* shall be imposed. Neither an income *tax* rate increase nor a new state definition of *taxable* income shall apply before

12

the next *tax* year. Any income *tax* law change after July 1, 1992 shall also require all *taxable* net income to be *taxed* at one rate, excluding refund *tax* credits or voter-approved *tax* credits, with no added *tax* or surcharge.

Colo. Const. art. X, § 20(8)(a) (emphases added).

¶19 Viewed in the context of section (8)(a) as a whole, the term "surcharge" in the final phrase "with no added tax or surcharge" is most naturally interpreted as an added charge on income that is functionally akin to a tax—that is, a charge that is designed to "raise revenues for general governmental spending." *Barber v. Ritter*, 196 P.3d 238, 249 (Colo. 2008). A surcharge that is instead a fee imposed to "defray the cost of services provided to those charged," does not function like a tax and, therefore, falls outside of the scope of section (8)(a). *Id.* at 241.

¶20 Because the final sentence of section (8)(a) is limited in scope to changes to income tax laws and because the term "surcharge" in this provision refers only to charges that, like taxes, are designed to raise revenues to defray general governmental expenses, we reject Chronos's argument that the provision prohibits any and all fees calculated based on income. Rather, we hold that the final sentence of section (8)(a) only precludes added taxes and tax-like surcharges to taxable net income in connection with a change to income tax law.

## C. Application

¶21 Applying the above interpretation, we conclude that the Act does not run afoul of section (8)(a). Section (8)(a) is inapplicable here because the Act does not

13

represent any change to income tax law. The Blue Book characterized the Act as an update to federal and state labor and employment laws—namely, the Federal Family and Medical Leave Act, 29 U.S.C. § 2612(1), and the Colorado Healthy Families and Workplaces Act, § 8-13.3-403. *See* Legis. Council, Colo. Gen. Assemb., Rsch. Pub. No. 748-1, *2020 State Ballot Information Booklet* 55 (2020). Neither the Blue Book nor the statutory language ever refers to the premium as a tax on income. Additionally, Proposition 118 did not codify the Act in Title 39 of the Colorado Revised Statutes (concerning taxation), but rather in Title 8 (concerning labor and industry laws). The Act also housed the Division within the Colorado Department of Labor and Employment, § 8-13.3-508(1). These circumstances further indicate the Act was never understood to be a change to income tax law, either by Colorado voters or by the state.

¶22 True, a premium can be an unconstitutional tax on income even if the Act does not characterize the premium as a tax. But as Chronos conceded below, the premium is a fee, not a tax. And although the premium is assessed as a percentage of an employee's taxable wages, this is because the wage-replacement benefits that an eligible employee may receive under the Act hinge on the amount the employee earns.

¶23 Unlike a tax, which, as noted, is designed to raise revenues to defray general governmental expenses, the Act expressly provides that the premium at issue is a

14

fee used "to defray the cost" of providing paid family and medical leave to Colorado employees. *See Barber*, 196 P.3d at 241 (holding that "a charge is a 'fee,' and not a 'tax,' when . . . its primary purpose is to defray the cost of services provided to those charged"); § 8-13.3-518(1) (providing that "[a]ny money remaining in the fund at the end of a fiscal year remains in the fund and does not revert to the general fund or any other fund"). Also unlike a tax, businesses may decline to pay the premium if they offer a comparable service to their employees. *See* § 8-13.3-521(1). In short, the premium at issue is a fee, not a tax or comparable tax-like surcharge that implicates section (8)(a).[5]

## IV. Conclusion

¶24     The district court correctly concluded that the Act does not violate section (8)(a) of TABOR. The Act did not represent a change to income tax law, and, in any event, the premiums collected do not represent an impermissible added tax or surcharge for purposes of section (8)(a). We therefore affirm the district court's order granting the motion to dismiss for failure to state a claim upon which relief can be granted.

---

[5] Because we conclude that the premium does not run afoul of section (8)(a), we need not address the severability of the Act's funding mechanism from the rest of the Act.

15